H. B. SPRAGINS et al. v. JAMES R. WHITE.

*Contract—Construction—Province of the Jury and the Court— Instructions.*

1. Where the terms of a contract are fixed, the Court and not the jury is its proper interpreter.

2. In an action for the price of a certain lot of shoes, the defence was that they were not delivered at the time agreed on, the agreement being that the defendant bought the goods upon plaintiffs' promise to have them at a fixed place in two weeks, so the instruction of the Court that the jury must inquire what was meant by it, was error.

MERRIMON, C. J., dissented.

108—29

This was a CIVIL ACTION, tried on appeal from a Justice, by *Armfield, J.*, at Spring Term, 1890, of BERTIE Superior Court.

The plaintiffs brought this action in the Court of a Justice of the Peace to recover the price of certain goods—shoes—sold by them to the defendants. The latter denied the allegations of the complaint, and alleged that, by a special agreement, the plaintiffs promised to sell and deliver to them certain shoes at their place of business within a time specified, which they failed to do; that they were not bound to receive the shoes, and did not do so, etc.

On the trial in the Superior Court, the plaintiffs produced evidence tending to prove their cause of action as alleged by them.

One of the defendants testified in their own behalf, among other things, as follows: "About the last of February, 1889, A. R. Benton, representing the plaintiffs, came to my store in Aulander, and, after some conversation, I agreed to buy of him a bill of shoes upon his promise to have them in Aulander in two weeks. That was the main inducement to the bargain. Without this promise I would not have taken the goods. I had a contract to fill within two weeks. Plaintiffs sent me an invoice of the goods and shipped them, which I have. I also took down a memorandum of the order given Mr. Benton. I have that memorandum."

The Court having directed the attention of the jury to the evidence and view of the case favorable to the plaintiffs, instructed them further as follows:

"But the defendant contends that, at the time he purchased of plaintiffs' agent, there was an express bargain and agreement that the goods should be delivered at his house in two weeks. This plaintiffs deny. But if you should believe that this agreement and bargain were made, then you must inquire and determine what was meant and understood by it by the parties making it. Did it mean that the

plaintiffs were to insure, at all events, the delivery by the transportation company of the goods in two weeks, and that in failure of such delivery in two weeks the sale was to be void at the option of the defendant, and he might return the goods to plaintiffs? If so, plaintiffs are not entitled to recover.

" But if it meant that plaintiffs were to use all due diligence in forwarding the order, in packing and shipping the goods by the common carrier, and plaintiffs did all these things, then plaintiffs are entitled to recover the bill and interest, as before stated."

The defendant excepted upon the ground that " the Court erred in leaving the interpretation of the contract to the jury." There was a verdict and judgment for the plaintiffs, and the defendants appealed to this Court.

*Mr. D. C. Winston,* for plaintiffs
*Mr. F. D. Winston* (by brief), for defendants.

SHEPHERD, J.: " Where a contract (says Judge GASTON in *Young* v. *Jeffreys,* 4 D. & B., 216) is wholly in writing, and the intention of the framers is by law to be collected from the document itself, then the entire construction of the contract—that is, the ascertainment of the intention of the parties, as well as the effect of that intention, is a pure question of law; and the whole office of the jury is to pass on the existence of the alleged written agreement. Where the contract is by parol (that is oral) the terms of the agreement are of course a matter of fact, and if those terms be obscure, or equivocal, or are susceptible of explanation from extrinsic evidence, it is for the jury to find also the meaning of the terms employed; but the effect of a parol agreement, when its terms are given and their meaning fixed, is as much a question of law as the construction of a written agreement."

In speaking of oral contracts, NASH, J., remarks in *Fester-man* v. *Parker*, 10 Ired., 474, that "if there be no dispute as to the terms and they be precise and explicit, it is for the Court to declare their effect." See also *Rhodes* v. *Chesson*, Busb., 336; *Pendleton* v. *Jones*, 82 N. C., 249.

"Unless this were so (says Parke, B., in *Neilson* v. *Harford*, 8 M. & W., 806) there would be no certainty in the law; for a misconstruction by the jury cannot be set right at all effectually." We are sure that the learned Judge was entirely familiar with the above principles, but we think that they were not properly applied in the present case.

The terms of an oral contract must necessarily be ascertained from the testimony of the witnesses, and it is the duty of the Court to instruct the jury as to the law applicable to the various phases arising upon such testimony. But where the Court presents to the jury a particular view of the facts, and this embodies the terms of a contract which are in themselves precise and explicit, the Court should declare their legal effect, and it would be error to leave this to be determined by the jury. In such a case the rule is the same as if the contract were in writing. After charging the jury upon the testimony of the plaintiffs, his Honor presented the contention of the defendants, which was founded upon the evidence of one of their number, as follows: "I agreed to buy of him (the agent of plaintiffs) a bill of shoes upon his promise to have them in Aulander in two weeks." According to the defence this was the entire agreement as to the shipment and delivery, and it is not varied in any manner because it induced the defendant to purchase the goods. It was the *contract* resulting from the "express bargain and agreement" that formed the inducement, and it is *this* contract alone that was to be interpreted. The language used is clear and precise. It is not unusual or equivocal; nor does it involve any scientific exposition by experts, nor is it doubtful in the sense that it may be explained by

evidence of usage or other extraneous circumstances. If the
language, being thus free from ambiguity, leaves the mean-
ing of the parties in doubt, it is the duty of the Court, and
not the jury, to determine its legal effect; and if no definite
meaning can be attached to such language, then it is the
duty of the Court to so hold. *Silverthorn* v. *Fowle,* 4 Jones,
362. His Honor, after stating the terms of the contract,
instructed the jury that if *such* was the contract, they must
further enquire and determine what was meant and under-
stood by it by the parties making it. Now the charge
assumes that the terms of the contract are ascertained, but
at the same time leaves its interpretation to the jury. The
Court should have interpreted this meaning according to the
terms of the assumed contract, and not according to absent
terms incorporated into the same by what the jury were to
infer was the meaning of the parties. In this we think
there was error.

MERRIMON, C. J.—dissenting: The special contract alleged
by the defendants was not in writing. If it had been so,
and the writing had been admitted or proven by proper evi-
dence, the Court would have interpreted its meaning. The
proper construction of contracts is matter of law, and it is
the province of the Court to interpret its meaning. When
they are written, and cannot be explained or modified by
parol, as in some cases they may be, their terms are settled,
and their meaning is simply a question of law to be deter-
mined by the Court.

When, also, a contract has not been reduced to writing, but
its terms appear—are precise, clear and explicit—the Court
must interpret their meaning and legal effect. If, however,
the parties to an unwritten contract dispute about its terms,
and these are not clear nor definite, are obscure or equivocal,
or their use is not certain and determinate, or it must be
inferred from the conduct of the parties, such contract—

what its terms are—must be ascertained by the jury. And so, also, if the terms used are technical, or unusual, and their meaning must be gathered from experts, or persons acquainted with the particular act or business to which such terms refer, and in the like cases, the jury must ascertain the meaning of such terms as used by the parties; still, when their use and what they are are ascertained by the jury, it is the duty of the Court to interpret the contract ascertained as matter of fact by the jury. The jury must ascertain, as matter of fact, what the contract is, and the Court must determine what is its legal import and effect. In such cases the Court should generally give the jury instructions as to the meaning and effect of the contract, accordingly as they may find it to be, carefully pointing out their duty in ascertaining what the contract in question is. *Young* v. *Jeffreys*, 4 Dev. & Bat., 216; *Massey* v. *Belisle*, 2 Ired., 170; *Festerman* v. *Parker*, 10 Ired., 474; *Silverthorn* v. *Fowle*, 4 Jones, 359.

In this case the exception is based upon a misapprehension of the instruction complained of. The Court did not intend to leave it to the jury to interpret the contract in question, nor did it do so in effect. The contract alleged was not in writing: the principal evidence—that of one of the defendants—tending to prove it was not very explicit, unequivocal and determinate. On the contrary, it left the real agreement to inference in material respects. The witness said: "I agreed to buy of him (the plaintiff's agent) a bill of shoes upon his promise to have them in Aulander in two weeks;" but he did not say certainly, in terms, that the agent agreed, on his part, to deliver the shoes at the place mentioned within that time; that this was a substantial part of the contract, and that it was understood that the defendants would not be bound to take the shoes if they were not so delivered. This was left in doubt—to inference. He said "that this was the main inducement to the bargain; without this promise I would not have taken the goods." He does

not say, in terms, that the agent so understood and agreed—that he did, was left to inference. He did not say, in terms, that the contract was special—out of the ordinary course of trade in such cases. That was left to inference. Hence the Court told the jury to enquire whether there was such special contract, and if so, what was meant, not as matter of law, but as matter of fact, by it, by what was said and mutually understood and agreed upon by the parties. That is, the Court instructed the jury to ascertain from the uncertain, undeterminate evidence of such contract, what it was as matter of fact. It submitted to them, not what was the legal meaning of the words used by the defendants, or by either party, but whether the parties, in fact, mutually understood and agreed that the shoes should be delivered "in two weeks." at the defendants' place of business, or whether, in fact, it was agreed that the plaintiffs, in the ordinary course of business, sold the defendants the shoes, and this was the fact of the agreement, and the plaintiff's agent said—simply added—not as a part of the agreement, that he would deliver them "in two weeks," meaning no more than that he would be prompt in shipping them. The Court further said, in substance, that if the jury should find the contract to be as contended by the defendants, then, as a matter of law, the plaintiffs could not recover. Thus it intepreted the contract in that view. It further said, in effect, that if the jury should find the contract to be, in fact, as contended by the plaintiffs, then the latter could recover. Thus it interpreted the meaning and legal effect of it in the view favorable to the plaintiffs.

The evidence in this case left the terms of the contract much more in doubt than did the evidence of the contract in question in *Massey* v. *Belisle, supra.* In that case "the plaintiff stated to the defendant, as a fact, that it had been discovered that her house was two feet upon his lot. Upon this information she promised to pay him four dollars per

annum while it remained there. At the expiration of the first year, when the rent was demanded, she refused to pay, alleging that the house was altogether upon her own land. After this refusal, she did pay four dollars, upon his express promise to refund it if it should turn out that the house was not upon his lot. The parties then agreed upon a mode by which the boundaries of their respective lots should be determined. Unfortunately, the attempt thus to determine their boundaries failed, and the plaintiff sued for the next year's rent. Now, it seems to us clear that upon what terms and upon what consideration the defendant promised to pay rent, was an inquiry of fact for the determination of a jury." The Court said that the terms of fact being doubtful, it was the province of the jury to ascertain the same. They certainly were more definite than the terms in question in the present case.

Perhaps the instruction given to the jury might have been more precise, but it was quite intelligible, and substantially, in all respects, correct. The Court interpreted the contract as to its legal import and effect, accordingly as the jury might ascertain it to be as matter of fact, and it gave them proper instructions as to their duty.

The other exceptions are without merit, and it would serve no useful purpose to advert further to them.

*Per Curiam.*                          New trial.