SIMPSON, BASS & CO. v. T. H. PEGRAM, Jr., et al.

*Written Contract—Construction—Evidence.*

1. While the entire construction of a written contract, whose terms are ascertained, that is, the ascertainment of the intention of the parties, is a pure question of law for the Court, and the sole office of the jury is to pass on the existence of the alleged agreement, yet, where the language of the written contract is doubtful in the sense of requiring explanation by experts or by evidence of the usage of trade, such testimony is admissible and should be submitted to the jury under proper instructions.

2. Where defendants, in an action on a contract growing out of written correspondence, introduced testimony tending to show the meaning of certain terms used in the contract under the customs and usage of trade, they cannot complain that the trial Judge submitted such testimony to the jury for that purpose instead of construing the contract by the written correspondence alone.

3. Nor can the defendant object in such case after having introduced several letters in relation to other transactions between him and the plaintiffs for the purpose of showing the course of dealing between the parties.

CIVIL ACTION by Simpson, Bass & Co. against T. H. Pegram, Jr., and J. C. Buxton and J. S. Grogan, assignees of Pegram, for the benefit of creditors, to recover the pro-

ceeds of the sale of flour alleged to have been consigned by plaintiffs to Pegram for sale by him on commission, and which passed to the assignees by the assignment of Pegram, and was sold by them. The action was tried before *Arm-field, J.*, and a jury, at July (special) Term, 1892, of FOR-SYTH Superior Court.

The plaintiffs sought to follow the proceeds of the sale of the flour in the hands of the assignees.

Defendants admitted the shipment of the flour to Pegram by the plaintiffs, but denied that it was on consignment, and insisted that it was sold to and bought by Pegram.

The issues submitted to the jury and the responses were as follows:

1. Was the flour mentioned in the complaint consigned to defendant Grogan? Answer. Yes.

2. Was Pegram a purchaser of said flour? Answer. No.

3. For what amount did defendants Buxton and Grogan sell said flour? Answer. $590.

Plaintiffs introduced a letter from defendant Pegram addressed to them, ordering the flour in controversy, and a statement rendered to defendant Pegram by them marked "Exhibit B." The letter was as follows:

"OFFICE OF T. H. PEGRAM, JR.,

"GENERAL MERCHANDISE BROKER,

"CONSIGNMENTS SOLICITED,

"AND DEALER IN WAGONS, GRAIN, HAY, MILL FEED, ETC.,

"WINSTON, N. C., November 11, 1887.

"SIMPSON, BASS & Co., *Richmond, Va.*

"GENTS:—I enclose order for a car load of 'Bob White,' which please ship as soon as possible, as I need the goods right now. If you can, please bill the car to railroad at 100 pounds, and let me have the difference in

freight, which will enable me to push the goods right off. Would have taken some of the other brand, but cannot use it in barrels.            Yours truly,

"T. H. PEGRAM, JR."

The statement ("Exhibit B") sent to Pegram at time of shipment by plaintiffs was as follows:

"RICHMOND, VA., November 17, 1887.

"MR. T. H. PEGRAM, JR., *Winston, N. C.,*

"BOUGHT OF SIMPSON, BASS & CO.,

"GENERAL COMMISSION MERCHANTS, WHOLESALE DEALERS IN FLOUR, GRAIN, HAY, ETC.

"TERMS.            Nos. 1205 and 1207 Cary Street.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| "To | 50 | barrels Bob White, | | | $\frac{1}{2}$ | sacks, | |
| " | 25 | " | " | " | $\frac{1}{4}$ | " | |
| " | 25 | " | " | " | $\frac{1}{8}$ | " | |
| " | 25 | " | " | " | $\frac{1}{16}$ | " | |
| | 125 | | | | $4.75 | | $593.75 |

"Less brokerage, 10 per cent. per bbl.,    12.50

$581.25 "

Plaintiffs introduced H. E. Fries, who purchased the flour in controversy from the defendants, assignees of defendant Pegram, and proved by him the amount he had paid said assignees for said flour. This witness was asked, on cross-examination, if it was not the custom of trade among mill men (he being one) in shipping flour, as in this case, to use the word "brokerage," as it appeared in statement "B" rendered in this case, in the sense of "discount," and that looking only at statement "B," if he would declare this transaction a sale, and not a consignment. He

answered that he did not know the customs of trade in transactions like this one in controversy, as he never transacted his business in this way, and therefore he could not answer this question.

The defendants introduced J. G. Young, a commission merchant and broker, who, among other things, testified that he was acquainted with the customs of trade in sales of flour by the car load, like the one in controversy, and that a discount was allowed commission merchants and brokers who handled such goods, and that the words "less brokerage or commissions, ten cents per barrel," did not indicate such goods were consigned, if person receiving the goods had the exclusive right to sell that special brand of goods in that market; that in cases of this kind he would understand from "Exhibit B," a sale, and not a consignment. He was asked, on cross-examination, what he would infer from "Exhibit B," if it were a transaction with a general merchant, and not with a commission merchant or a broker, and he said he would infer a sale, and not a consignment, and that he would infer the same if the transaction were with a commission merchant or broker, unless he received the goods by the car load, and had the exclusive sale of that brand in that market.

Defendants introduced letters, and copies of letters, passing between plaintiffs and defendant Pegram in regard to the transaction, and other transactions tending to show the course of dealing between them. At the close of the evidence the defendants insisted that as the whole contract was in writing its construction was for the Court, and not for the jury, and that there was not sufficient evidence of a consignment.

But his Honor submitted the issues to the jury, upon the evidence, and the defendants excepted. There was a verdict for plaintiffs and a rule for a new trial for error in submit-

ting the issues to the jury.    Rule discharged, judgment rendered for plaintiffs and defendants appealed.

*Messrs. Glenn & Manly* and *Jones & Kerner*, for plaintiffs.
*Messrs. Watson & Buxton*, for defendants (appellants).

SHEPHERD, C. J.: It is unquestionably true, as contended by the defendants' counsel, that where the terms of a contract have been ascertained or where it is evidenced by a written instrument, or, as in this case, by written correspondence between the parties, "the entire construction of the contract, that is, the ascertainment of the intention of the parties, as well as the effect of that intention, is a pure question of law, and the whole office of the jury is to pass on the existence of the alleged written agreement." *Spragins* v. *White*, 108 N. C., 449.

If, however, the language used is doubtful in the sense that it requires the scientific exposition of experts or explanation by evidence of the usage of trade or other extraneous circumstances, such testimony is admissible and should, under appropriate instructions, be submitted to the jury.    1 Greenleaf Ev., 280.

It seems that the words "less brokerage ten cents per barrel," as used in the correspondence between the parties, have, under certain circumstances, a meaning peculiar to dealings between commission merchants engaged in the flour business, in so far as they relate to the question of whether there is a sale or a consignment.    This at least appears to have been the view of the defendant, who introduced testimony tending to show such meaning under "the customs of trade in sales of flour by the car load like the one in controversy."    There may have been phases of the case in which a part of this testimony would have been beneficial to the plaintiffs.    Be that as it may, the defend-

ant, having introduced it as explanatory of the terms of the contract, cannot complain that it was submitted to the jury for that purpose. Even had it been incompetent, and he had moved to strike it out, a refusal to do so would not have been the subject of review in this Court. *State* v. *Efler,* 85 N. C., 585.

The testimony having a tendency to throw some light upon the transaction, we cannot see how the defendant could require the Court to exclude it from the consideration of the jury and decide the case upon the written correspondence alone.

Moreover, the defendant introduced several letters in reference to other shipments at various times. We must assume that he did this for the purpose of showing the course of dealing between the parties. This is an additional reason in support of his Honor's refusal to take the case from the jury.                                 Affirmed.