WILSON v. COTTON MILLS.

(Filed November 22, 1905).

*Contracts—Construction—Questions for the Court—Delivery of Cotton—Tender—Issues—Damages—Loss in Weight.*

1. The meaning of the terms of a contract whether written or verbal, when they are precise and explicit, is a question for the court, but if doubtful and uncertain, they may be submitted to the jury, with proper instructions, to ascertain the meaning and intent of the parties.

2. If the parties to an agreement dispute about its terms, an issue of fact is raised, as to the terms, to be decided by the jury who should be guided by instructions from the court.

3. Where the plaintiffs sold cotton to the defendant in March with the stipulation to deliver at their option in April, May or June, and on June 18 the defendant asked for an extension of the time fixed for delivery to July 8, which was not granted absolutely, and on June 25 the defendant ordered the plaintiffs to sell the cotton, when the price for July reached 11¼ cents or more, *held,* that this was a direction to hold the cotton for sale in July at not less than the price stated, and a refusal to take the cotton on July 23 was a breach of the contract.

4. Where the defendant had refused to take the cotton on July 23, this was a breach of its contract and it is immaterial that the plaintiffs shipped the cotton on the 29th, as they were not required to make any delivery, the refusal dispensing in law with any tender, and the plaintiffs being entitled to recover if they were ready, willing and able to deliver and otherwise comply with the contract on their part.

5. It is not material in what form issues are submitted to the jury, provided they are germane and each party has a fair opportunity to present his version of the facts and his view of the law so that the case can be tried on the merits.

6. In an action for the price of cotton sold, the loss in weight should not have been deducted in assessing the damages, as it appears from the defendant's letter that a loss "not to exceed three pounds per bale from the invoice weight" was to be allowed.

ACTION by R. T. Wilson and others against Levi Cotton Mills, heard by *Judge Chas. M. Cooke* and a jury, at the July Term, 1905, of the Superior Court of MECKLENBURG. From a judgment for the plaintiffs, the defendant appealed.

Action for the price of cotton. Plaintiffs alleged that in March, 1904, they sold to the defendant 100 bales of cotton at $14.42 per 100 pounds, to be shipped by them and delivered at Rutherfordton, N. C., in April, May or June, at their option, and to be paid for in lots of 25 bales each on the 10th, 20th, 25th, and 30th of July of that year. This the defendant admitted. Plaintiffs further alleged that afterwards, by agreement of the parties, the day of shipment was postponed until July 29, 1904, at which time it was shipped to the defendant, who refused to receive the same. Defendant denied the postponement, but admitted its refusal to receive the cotton, and alleged that it was shipped after the time of shipment had expired. The evidence tended to show that after some telegraphic correspondence, as to cancelling the sale upon request first made by defendant, the latter wrote the plaintiff as follows: "Yours of June 15 is at hand and noted. Would it be satisfactory to delay shipment

20 days? Please advise as to this. Do you expect a corner in July or August cotton? If you can sell 50 bales when July reaches 12.50 or over, you may do so. This order is subject to cancellation any time before your placing order. May get you to sell other 50 bales." Plaintiffs replied June 20 that they could probably delay shipment 20 days and would do so if they could, but they did not care for it to stand in the way of a favorable offer. They also stated that they would sell 50 bales when July contracts reached $12.50 or more. On June 25 defendant wired the plaintiffs as follows: "Sell, unless order revoked, first 50 bales July reaches eleven quarter or over." Plaintiffs replied: "We will execute this order if July reaches that point, which we fear is somewhat doubtful, unless we have some bad crop news." There was no other communication between the parties until July 23, when plaintiffs, through their agent, Mr. Lee, inquired of defendant if it had further directions to give in regard to the disposition of its cotton, to which the defendant replied that plaintiffs had not complied with their contract and it did not then need the cotton, which was afterwards shipped and tendered to defendant, who refused to receive it. The issues submitted to the jury with the answers thereto, were as follows: 1. Did the defendant refuse to perform its part of the contract? Ans. Yes. 2. What damage, if any, has the plaintiff sustained? Ans. $1,710 and interest from July 23, 1904. The jury were instructed that, as the contract was in writing, it is the duty of the court to construe it and that, if they believe the evidence, their answer to the first issue should be "yes." Upon the second issue the court charged that the measure of damages is the difference between the contract price, $14.42, and the market price of the cotton, at the place of delivery fixed by the contract, which witnesses testified was 11 cents, and that if they believed the evidence their answer to the second issue should be $1,710 and interest from July 23, 1904, the day on which the defendant refused

to receive the cotton.    There was a judgment for the plaintiffs and defendant appealed.

*Pharr & Bell* for the plaintiffs.
*Stewart & McRae* for the defendant.

WALKER, J., after stating the case:  There can be no doubt but that the construction of a contract is a matter of law.   If committed to writing, the meaning of the terms, when they are precise and explicit, is a question for the court, but if doubtful and uncertain they may be submitted to the jury, with proper instructions given hypothetically as the case may require, to ascertain the meaning and intent of the parties.   The law is the same as to verbal contracts.   If the terms are explicit the court determines their effect simply by declaring their legal meaning.   If the parties dispute about the terms of the agreement, an issue of fact is raised, as to the terms, to be decided by the jury who should be guided by instructions from the court.  *Massey v. Belisle,* 24 N. C., 170; *Sizemore v. Morrow,* 28 N. C., 54; *Festerman v. Parker,* 32 N. C., 474; *Harris v. Mott,* 97 N. C., 103.   *Gaston, J.,* says, in *Young v. Jeffreys,* 20 N. C., 213 (reprint 357): "Where a contract is wholly in writing, and the intention of the framers is, by law, to be collected from the document itself, then the entire construction of the contract—that is, the ascertainment of the intention of the parties as well as the effect of that intention, is a pure question of law, and the whole office of the jury is to pass on the existence of the alleged written agreement.   Where the contract is by parol the terms of the agreement are, of course, a matter of fact, and if those terms be obscure or equivocal, or are susceptible of explanation from extrinsic evidence, it is for the jury to find also the meaning of the terms employed; but the effect of a parol agreement, when its terms are given and their meaning fixed, is as much a question of law as the construc-

tion of a written instrument." This language summarizes the whole doctrine and is quoted with approval in the more recent case of *Spragins v. White,* 108 N. C., 449, where the question is fully discussed. The principle applies, of course, to agreements evidenced by written correspondence. *Simpson v. Pegram,* 112 N. C., 541; *Lindsay v. Ins. Co.,* 115 N. C., 212. As the contract in this case was in writing, and as its terms, we think, are explicit and the meaning of the parties unmistakable, it becomes our duty to construe it and declare its legal effect.

Plaintiffs sold the cotton to defendant in March, 1904, subject to the stipulation expressed in the contract that they might at their option deliver in the following April, May or June. Defendant on the 18th day of June asked for an extension of the time fixed for delivery to July 8. The request was not granted absolutely; but if it had been, we do not think it would change the legal aspect of the case or cause us to come to a different conclusion, because before the time for delivery had fully expired, that is on June 25, defendant ordered plaintiffs to sell the cotton, when the price for July reached eleven and a quarter cents or more. This was a plain direction to hold the cotton for sale in July at not less than the price stated, as it could not be determined whether the price of cotton would reach that figure until the full month had expired, or until the last day of the month, as the market price is subject to fluctuation and sometimes, as we know, to sudden and decided changes, and the event on which plaintiffs were authorized to sell might have happened on that very day. The correspondence shows, therefore, by strong and irresistible implication, that plaintiffs were to hold the cotton during the month of July or until the price specified could be obtained. We have no doubt that this is the true meaning of the contract as evidenced by the several writings. The order of defendant could not well have been executed under any other construction.

Defendant does not deny that it has failed to comply with the contract, if this is its proper meaning. Counsel in their brief, frankly state that the sole question is, whether the cotton was delivered within the time fixed by the contract, their contention being that the time of delivery was never changed by the defendant's letter of June 18, and the telegram of June 25, and the answers of plaintiffs thereto. They argue that the order to sell was not tantamount to an order to delay the shipment of the cotton, and that it could not be so unless the order to sell was for an indefinite time and that plaintiffs did not so construe the order, as they did actually ship on July 29. The position is not tenable. The order to sell was extended by its very terms to the month of July, the sale to be made when the price reached eleven and one-quarter cents. No inference adverse to the plaintiffs can be drawn from the fact that they shipped the cotton on the 29th, as defendant on the 23rd had refused to take the cotton. This was a breach of its contract and plaintiffs were not required to make any delivery, the refusal dispensing in law with any tender, and plaintiffs then being entitled to recover if they were ready, willing and able to deliver and otherwise to comply with the contract on their part and, as to this, there was no dispute. *Grandy v. Small,* 48 N. C., 10; *Blalock v. Clark,* 133 N. C., 306; *Hughes v. Knott,* 138 N. C., 105. If plaintiffs did more than the law required of them, the defendant has no reason to complain on that account and cannot benefit by it.

The issues submitted were broad enough for the defendant to present its defense in every possible phase. We have recently said: "It is not material in what form issues are submitted to the jury, provided they are germane to the subject of the controversy and each party has a fair opportunity to present his version of the facts and his view of the law, so that the case, as to all parties, can be tried on the merits." *Deaver v. Deaver,* 137 N. C., 240; *Warehouse Co. v. Oz-*

*ment,* 132 N. C., 839. The issues submitted were sufficiently comprehensive within the rule stated and the court properly rejected those tendered by the defendant. At least, there was no reversible error in doing so.

The loss in weight of the cotton should not have been deducted in assessing the damages, as it appears from the defendant's letter of March 23, 1904, that a loss "not to exceed three pounds per bale from the invoice weights" was to be allowed.

We have carefully considered the case and weighed the arguments, so well presented in the briefs of counsel, and have not been able to discover any error in the rulings of the court.

No Error.