RUFFIN v. RAILROAD.

(Filed September 25, 1906).

*Contributory Negligence — Issues — Harmless Error—Instructions—Continuing Negligence—Negligence—Question for Jury—Railroads—Station Platforms—Reversal of Train—Damages Recoverable.*

1. While it is the better practice to submit an issue in regard to contributory negligence, when pleaded, and there is evidence to sustain the plea, the omission to submit the issue is not reversible error, where the Court fully explained to the jury the several phases of the testimony relied upon to show contributory negligence and it was apparent that defendant had been given the benefit of such testimony, with its application.

2. The expression, "he cannot recover," should not be used in an instruction; but the instruction should conclude in directing the jury to answer the issue accordingly as they find.

3. An instruction that if the jury find that on the night of the alleged injury the plaintiff was under the influence of liquor, and that was the cause of his failure to get off on the right side of the train, and thereby *directly* contributed to his own hurt, the plaintiff would be guilty of contributory negligence, and they would answer the first issue "No," is not prejudicial to the defendant in the use of the word "directly" instead of "proximately."

4. An instruction that the defendant's failure to have sufficient lights upon their wharf, upon which passengers are invited to alight, would constitute continuing negligence, if it continued during the landing and delivering of passengers; and if they should find that the failure of defendant to keep such lights was the proximate cause of the plaintiff's injury, and he would not have been injured if there had been sufficient light to enable him to pass safely over the pier, provided he used reasonable care and diligence, they would answer the issue "Yes," is not prejudicial to the defendant by the use of the words "continuing negligence," taken in connection with the context.

5. A prayer, in which the Court is asked to instruct the jury that if they find certain facts grouped therein there was no negligence, is objectionable, unless all the material elements of the case be included, because it excludes from the jury the duty of drawing such reasonable inferences as the testimony would justify.

6. Since the decision in *Russell v. Railroad,* 118 N. C., 1098, this Court has uniformly treated negligence as a question of fact for the jury, with certain exceptions.

7. A railroad company must provide safe exits and reasonably safe platforms or facilities for entering and leaving cars.

8. When a railroad company makes provision only on one side of its track for passengers to leave its cars, and it is dangerous to leave on the other side, it is a question for the jury whether it is negligence for the company not to have provided some means to prevent passengers from leaving on the wrong side, or to notify them not to do so.

9. The reversal of a train in the night is well calculated and usually does confuse passengers, and it would be but common prudence to notify them thereof.

10. Where the plaintiff has been injured by the negligent conduct of the defendant, he is entitled to recover damages for past and prospective loss resulting from defendant's wrongful and negligent acts; and these may embrace indemnity for actual expenses incurred in nursing and medical attention, loss of time, loss from inability to perform mental or physical labor, or of capacity to earn money, and for actual suffering of body or mind which are the immediate and necessary consequences of the injuries.

ACTION by Thomas Ruffin against Atlantic and North Carolina Railroad Company, heard by *Judge B. F. Long* and a jury, at the January Term, 1906, of the Superior Court of CARTERET.

This action is prosecuted by plaintiff for the purpose of recovering damages for personal injuries sustained by him while a passenger upon defendant's train. Defendant denied negligence, and for further answer alleged that the injury was "caused by the negligence of plaintiff in that on the night in question he was under the influence of liquor and thereby contributed to his own hurt, and that plaintiff failed to act as a prudent man in alighting from said train." Defendant tendered an issue directed to plaintiff's alleged contributory negligence, which his Honor declined to submit, and defendant excepted. His Honor submitted the following issue: "Was plaintiff injured by defendant's negligence, as alleged?" together with an inquiry as to damages.

There was evidence tending to show that plaintiff went upon
defendant's train at New Bern, as a passenger, for the pur-
pose of going to Morehead City, thence by boat to Beaufort.
He boarded the train at New Bern on the north side of the car.
Before reaching Morehead the train was turned around upon
a "Y," thereby backing into Morehead. The custom, up to a
short time before the day of the injury, had been to pull into
the depot. This was known to plaintiff, but he had no notice
of the change. Defendant maintained a pier at Morehead,
running into and over the waters of Bogue Sound. Passen-
gers left the train on said pier, taking a boat to Beaufort.
There was, upon the pier, an elevated platform between two
railroad tracks; the platform was built for the accommoda-
tion of passengers, with approaches leading to and from it.
On either side of the platform were trestles used exclusively
for trains other than passenger. The spaces between the
cross-ties on the trestles were open. There was no evidence
of negligence in the construction of the platform. There was
evidence tending to show that there were lights on the plat-
form side of the train, but none on the ocean or south side.
When the train backed upon the pier plaintiff left the car
on that side, and after making one or two steps, fell between
the cross-ties and was injured. He did not know that the
train had been turned around. He knew of the conditions
on the pier at Morehead. There was no railing on the plat-
form, or on the car, to prevent passengers alighting on the
ocean side, nor was he warned not to get off on that side.
There was evidence that plaintiff "was under the influence of
liquor; not very much." The evidence was conflicting in
regard to plaintiff being directed to get off on "platform
side." There was evidence that the same condition on pier
had existed for many years. The evidence regarding suffi-
ciency of lights was conflicting. There were no lights on
ocean side; passengers were not expected to leave the train
on that side.

There were exceptions to his Honor's rulings upon the admission of testimony and instructions given and refused, which are set out in the opinion. There was a verdict for the plaintiff. Judgment, and appeal by the defendant.

*D. L. Ward* and *M. DeW. Stevenson* for the plaintiff.
*C. L. Abernathy* for the defendant.

CONNOR, J., after stating the case: The defendant insists that his Honor committed error in refusing to submit to the jury an issue in regard to plaintiff's alleged contributory negligence. It was held in *Scott v. Railroad,* 96 N. C., 482, that when the Court fully explained to the jury the several phases of the testimony relied upon to show contributory negligence, and it was apparent that defendant had, in that way, been given the benefit of such testimony, with its appli-cation, an omission to submit the issue was not reversible error. Since the decision of that case the statute was enacted requiring defendant to specially plead such negligence and thereby assume the burden of showing it. Revisal, sec. 483. While we think it the better practice, and suggest that the issue in regard to contributory negligence, when pleaded, and there is evidence to sustain the plea, be submitted, we adhere to what is said upon the subject in *Wilson v. Cotton Mills,* 140 N. C., 52, and the cases therein cited.

Both sides submitted prayers for special instructions, several of which his Honor gave. Among others, he instructed them as follows: "1. If you should find that the defendant company ran its train upon the 'Y,' about a mile from its station at Morehead City, and reversed its engine and cars and backed its train into Morehead City and to its terminal at its pier, but informed the plaintiff that it had reversed its cars aforesaid, this of itself would not make the defendant negligent. 2. If you find from the evidence that the defendant company ran its cars upon the 'Y,' about a mile from its station at Morehead City, and reversed its engine and cars and

backed its train into Morehead City and to its terminal at its pier without informing the plaintiff that it had reversed its cars, and you still further find that the plaintiff in alighting from said train on the night of the alleged injury failed .to exercise the ordinary care of a prudent person in like circumstances in alighting from said car, and did not look nor take notice of any danger, then plaintiff could not recover. It was the duty of the plaintiff to have acted the part of a prudent person in getting on and off the train, and if he did not act like a prudent person, then he cannot recover, if such failure if found by you was the cause of his injury." There can be no just criticism of the propositions involved in these instructions. The expression, "he cannot recover," should not be used. The instruction should conclude in directing the jury to answer the issue accordingly as they find. They clearly present the debated questions involving both plaintiff's and defendant's conduct.

He further charged: "3. If you find from the evidence that on the night of the alleged injury the plaintiff was under the influence of liquor, and that was the cause of his failure to get off on the right side of the train, and he thereby *directly* contributed to his own hurt, the plaintiff would be guilty of contributory negligence, and you would answer the first issue 'No.' Even if the defendants were guilty of negligence and the plaintiff was under the influence of liquor and intoxicated and thereby contributed *directly* to his hurt, then the plaintiff cannot recover."

Defendant excepts to the use of the word "directly" by his Honor, insisting that it is not synonymous with "proximately." Our attention is called to several decisions in which it is held that the terms are not synonymous. We can well understand that, in some cases, the testimony may be such as to present the distinction urged by counsel, but in the connection in which it is used by his Honor we cannot think that the jury could have been misled to defendant's prejudice. It

occurs to us that plaintiff would have better cause to complain in this respect than defendant.

His Honor further instructed the jury: "4. It was the duty of the plaintiff in alighting from the cars on the night in question to look and see if he were getting off on the right or wrong side, and if he didn't use the ordinary care of a prudent man, and failed to look before alighting from the car, he could not recover if his injury is due to such lack of care, if you find that he did not use ordinary care. 5. The defendants are only required to keep that portion of their platform safe that is used exclusively for the accommodation of passengers; also, they are required to keep in a safe condition the approaches leading to said platform; that is to say, the way used by passengers in going to and from said platform must be reasonably safe. 6. It is the duty of the defendants to keep their pier in such condition as to make it safe for the public to use it; that if the plaintiff was a passenger and had a right to be on the wharf, and exercised reasonable care and diligence, and was injured solely from a defect in the wharf, he is entitled to recover, unless the defect was so hidden and concealed that it could not be discovered by such examination and inspection as the construction, use and exposure of the wharf reasonably required; that it was the duty of the defendants to take such a degree of care of their pier that those who had a lawful right to go there could do so without incurring danger to their persons, provided they exercise ordinary care and diligence."

While the sixth instruction does not appear to be called for by the testimony, there can be no exception to the general propositions contained in it, and we do not see how the defendant could have been prejudiced thereby. The instruction in regard to the duty of defendant to keep lights upon their wharf, upon which passengers are invited to alight, is clearly correct. His Honor told the jury that their failure to have a sufficient light, if they found that there was such

failure, would constitute continuing negligence, if it continued during the landing and delivering of passengers; and if they should find that the failure of defendant to keep such lights, if it did so fail, was the proximate cause of the plaintiff's injury, and he would not have been injured if there had been sufficient light to enable him to pass safely over the pier, provided he used reasonable care and diligence, they would answer the issue "Yes." The defendant criticises this instruction because his Honor used the words "continuing negligence." The criticism is based upon a misconception of the sense in which the term is used. In *Greenlee v. Railroad,* 122 N. C., 977, and the line of cases in which the doctrine of "continuing negligence" is applied, the negligence of the defendant in failing to supply automatic couplers is declared to be the *causa causans* of the injury, thereby excluding the defense of contributory negligence. The basis of the doctrine and its limitations are pointed out by *Mr. Justice Hoke* in *Hicks v. Manufacturing Co.,* 138 N. C., 331. His Honor expressly excluded any such principle in this case, by telling the jury that the failure to keep sufficient lights would entitle the plaintiff to a verdict, provided such failure was the proximate cause of the injury. His language clearly shows that he used the term in its ordinary sense, that is, that such negligence, although continuing, was actionable only when it became the próximate cause of the injury. We do not think that any harm could have come to defendant by the use of this language, taken in connection with the context.

His Honor carefully excluded any suggestion that the failure to have sufficient lights relieved the plaintiff of the duty to exercise due care in alighting from the train.

Defendant presented several prayers in which the Court was asked to instruct the jury that if they found certain facts grouped therein there was no negligence. This form of instruction, unless all the material elements of the case be included, is objectionable, because it excludes from the jury

·the duty of drawing such reasonable inferences as the testimony would justify. In those jurisdictions in which negligence is treated as a question of law, the facts alone being for the jury, this is a proper form of instruction. It was so held in this Court until the decision of *Hinshaw v. Railroad,* 118 N. C., 1047, and *Russell v. Railroad, ib.,* 1098. In *Emry v. Railroad,* 109 N. C., 589, this doctrine was recognized and adhered to as the law. The opinion of *Merrimon, C. J.,* clearly announces and sustains the principle that negligence is a question of law. The case was decided by a divided Court.

In *Russell's case, supra, Mr. Justice Avery,* writing for a unanimous Court, overrules *Emry's case* and adopts the rule followed by the Federal courts and a large majority of the State courts, which treat, with certain exceptions which he states, negligence as a question of fact for the jury. These cases have been uniformly adhered to by this Court in a number of decisions. In *Turner v. Lumber Co.,* 119 N. C., 387 (400), it is said: "The Court may submit issues of negligence with the instruction that it is the province of the jury to say whether the party whose conduct is in question has met the test rule of the prudent man." *McCracken v. Smathers, ib.,* 617. There are a large number of illustrative cases in our reports. When it is sought to apply the exception to the rule, the facts being undisputed or found by the jury, and being susceptible of but one reasonable inference, as in *Neal v. Railroad,* 126 N. C., 634, and *Bessent v. Railroad,* 132 N. C., 934, the Court may either take the case from the jury and decide it as a question of law, or instruct the jury that if the facts are found which exclude any other inference, to answer the issue accordingly.

In this case his Honor could not properly have given the instruction, for several reasons. The testimony was not, in all respects, uncontradicted, and the facts grouped in defendant's prayers did not include the several phases of the case.

The real question presented in this case is whether, upon
defendant's own testimony in regard to the construction of the
tracks upon the pier, the reversal of the train on the "Y"
and the danger of passengers alighting from the train on the
ocean side, there was not sufficient evidence of negligence to
carry the case to the jury under the rule of the conduct of
the prudent man. We are of the opinion that his Honor
properly submitted the case to the jury.

The measure of duty imposed upon the carrier is thus
stated in the latest work on the subject: "It must provide
safe exits and reasonably safe platforms or facilities for
entering and leaving cars." Moore on Carriers, 612. "A
railway company has not discharged its whole duty to the
passenger when it has provided a safe exit from its cars, while
at the same time there exists another way which is not safe,
and which is in such general use by its passengers as to
induce the belief that it is permitted in part at least for that
purpose. Hence, when a railroad company makes provisions
only on one side of its track for passengers to leave its cars,
and it is dangerous to leave on the other side, it is a question
for the jury whether it is negligence for the company not to
have provided some means to prevent passengers from leav-
ing on the wrong side or to notify them not to do so." Fet-
ter Carriers, p. 153. This statement of the law, which we
approve, clearly carried the case to the jury, and we think
that in the light of all of the testimony they came to a cor-
rect conclusion.

Experience teaches us that the reversal of a train in the
night is well calculated and usually does confuse passengers,
and it would be but common prudence to notify them thereof.
Again, when one side of a car, at the depot, is a dangerous
place to alight, the company should have a porter, or some
employee, to notify passengers not to do so, or to use the
simple contrivance of a gate on that side to be closed to the
exit of passengers. Some such means to prevent injury is
but common prudence and should be used by carriers.

The defendant insists that to permit a recovery in this case would "impose upon railroads great expense to protect their passengers and require them to deal with grown people as with children." We cannot perceive any heavy or unreasonable burden imposed by the rule of diligence prescribed by the law. The safety of passengers should be the first consideration of all who engage in the business of common carriers.

His Honor instructed the jury in regard to the measure of damages to which plaintiff would be entitled, as follows: "Where the plaintiff has been injured by the negligent conduct of the defendant he is entitled to recover damages for past and prospective loss resulting from defendant's wrongful and negligent acts, and these may embrace indemnity for actual expenses incurred in nursing and medical attention, loss of time, loss from inability to perform mental or physical labor, or of capacity to earn money, and for actual suffering of body or mind which are the immediate and necessary consequences of the injuries; but in this case, as the plaintiff has not introduced evidence to show what he paid for nursing and medical attention, or what his services for loss of time were worth, you will only consider such damages, if any, as he is entitled to recover for actual suffering of body and mind which are the immediate and necessary consequences of injuries sustained, if you find by the greater weight of the evidence he was injured by the negligent conduct of the defendant." To this defendant excepts, because his Honor stated that he gave the instruction as laid down in *Wallace v. Railroad,* 104 N. C., 449, and did not apply the law to the facts. We think the instruction correct and not open to the criticism made by the exception. We have examined the entire record and find

No Error.