# BAILEY v. SPALDING-LIVINGSTON INVESTMENTS CO.

No. 2498.   Decided November 18, 1913 (136 Pac. 962).

1. TRIAL—INSTRUCTIONS—PROVINCE OF JURY—CONSTRUCTION OF CONTRACT.   An instruction, in an action for commissions for selling land, that if the written agreement in evidence constituted the agreement of the parties, plaintiff's claim was to be "governed by that contract," and, if it was modified, that the contract as modified "would determine the right of the plaintiff to commission" without construing and applying the contracts, was erroneous for leaving their construction and application to the jury.   (Page 541.)

2. CONTRACTS—CONSTRUCTION—PROVINCE OF JURY.   The court should declare the legal effect of a contract involved, and not permit the jury to do so.[1]   (Page 542.)

3. TRIAL—MISLEADING INSTRUCTIONS—CONSTRUCTION OF CONTRACT.   In an action for commissions for selling lands, an instruction that if the original contract between the parties "was changed by mutual agreement for the mutual advantage of both parties," etc., was misleading as permitting the jury to believe that the modified contract might not have been binding because not as favorable to plaintiff as the original, especially where the court did not construe the contracts in the instructions.   (Page 542.)

APPEAL from District Court, Third District; *Hon. M. L. Ritchie,* Judge.

Action by W. D. Bailey against the Spalding-Livingston Investments Company.

Judgment for plaintiff.   Defendant appeals.

REVERSED AND REMANDED FOR A NEW TRIAL.

---

[1] Manti Savings Bank v. Peterson, 30 Utah, 475, 86 Pac. 414, 116 Am. St. Rep. 862.

*James Ingebretsen* for appellant.

*Willard Hanson* and *Thomas Marioneaux* for respondent.

RESPONDENT'S POINTS.

The services of a realty broker are fully performed and his commission fully earned when the sale of the property is completed or when he has procured a purchaser ready and willing to enter into a valid contract of sale upon the terms fixed by the owner. After a sale of real property has been completed, the default or insolvency of the purchaser procured by the broker will not defeat the recovery of the latter's commission. (*Root v. Greadwohl,* [Cal.] 128 Pac. 149; *Merritt et al. v. American Catering Co.,* [Cal.] 128 Pac. 1074; *Benedict v. Wilson,* 10 Cal. App. 719, 103 Pac. 350.) It is, of course, well settled that when a broker, employed simply to negotiate the sale of real estate, has found a purchaser, able, ready and willing to purchase upon the vendor's terms, his right to the agreed commission is complete and does not depend upon the final acceptance by the purchaser of a conveyance of the property sold. (*Gunn v. Bank of California,* 33 Pac. 1105; *Middleton v. Findla,* 25 Cal. 74; *Gonazles v. Broad,* 57 Cal. 224; *Duffy v. Hobson,* 40 Cal. 244; *Phelan v. Gardner,* 43 Cal. 311; *Phelps v. Prusch,* 83 Cal. 626, 23 Pac. 1111.) If the purchaser is willing to take the property on different terms and the variance is waived by the vendor, the broker may still obtain his commission. (Mechem on Agency, Sec. 965-966.)

Right to a commission is not affected by the fact that the principal and customer after concluding a contract, subsequently enter into an agreement modifying its terms or cancel the contract. (*Bush v. Mattox,* 42 S. E. 240; *Bishop v. Averill,* 49 Pac. 237, 50 Pac. 1024.) If the principal concludes a contract of sale with the purchaser, the broker is not deprived of his commission because the contract so concluded differs in terms from the one he was authorized to negotiate. (*Knowles v. Harvey,* 52 Pac. 46; *McFarland v.*

*Lillard,* 28 N. E. 229, 50 Am. St. Rep. 234; *Marlatt v. Elliot,* 69 Kans. 447, 77 Pac. 104; *Ranson v. Weston,* 68 N. W. 152.) Commission becomes due and payable upon the completion of the transaction which broker was employed to negotiate, in the absence of a stipulation in the contract of employment to the contrary. (*Fitzpatrick v. Gilson,* 57 N. E. 1000; *Coward v. Clanton,* 55 Pac. 147; *Quitzow v. Jerrin,* 120 Cal. 255, 52 Pac. 632; *Rice v. Mayo,* 167 Mass. 550; *Whitaker v. Engle,* 60 N. W. 493; *Green v. Hollingshead,* 40 Ill. App. 195; *Brooks v. Leathers,* 112 Mich. 463, 70 N. W. 1099; *Kinder v. Pope,* 106 Mo. App. 536, 80 S. W. 315.)

STRAUP, J.

The plaintiff seeks to recover compensation for commissions alleged to have been earned by him and his assignors as agents in the sale of lands for the defendant. The defendant was engaged in selling lands in Sanpete County through agents who solicited and procured purchasers. The complaint is in four counts. The first for commissions alleged to have been earned by the plaintiff, and unpaid, amounting to $3152; the second for $1680, the third $169, and the fourth forty-two dollars, for commissions earned by other agents and unpaid. The defendant pleaded the general issue and payment. The case was tried to a jury, who rendered a verdict in favor of the plaintiff on the first count for $2770, the second $1323, the third seventy-nine dollars. The fourth was abandoned and not submitted. On the defendant's motion for a new trial the court set the verdict aside as to the second count, but permitted it to stand as to the first and third. The defendant appeals. So the controversy on the appeal chiefly relates to the unpaid commissions claimed to have been earned by the plaintiff. Agency is not disputed.

The plaintiff contended that his right to commissions and the amount thereof were fixed and controlled by a written agreement between him and the defendant, the material parts of which are:

"That the second party (the plaintiff) shall act as agent for the first party (defendant) in the sale of land and water rights belonging to said first party and located in what is commonly called 'Gunnison Valley,' in Sanpete County, Utah. Said second party shall act as said agent until this contract is rescinded or modified, and which may be done by either party upon notice to the other party. All sales made by said second party are and shall be subject to the approval of said first party, and shall not be binding on said first party until approved by it. Said second party shall receive as commission for said sales ten per cent. of the agreed purchase price of each sale." The plaintiff claimed, and adduced evidence to support the claim, that he, under that contract, solicited and procured purchasers with whom the defendant entered into written contracts to sell lands—lands shown them by the plaintiff—one at an agreed price of $7670, one $8800, another $12,312, another $19,127, and one for $3200, and claimed that he was entitled to ten per cent. of these amounts, a total of $5373, of which $2221 had been paid, leaving a balance unpaid of $3152. He contended that whenever the defendant entered into a written agreement with a purchaser solicited and procured by him, he was entitled, as commissions, to ten per cent. of the agreed purchase price, though nothing whatever was paid by the purchaser and nothing whatever received by the defendant, and though the contract, without the defendant's fault, was subsequently abandoned and canceled. The defendant contended that the plaintiff was paid in full, except the sum of $24.65, which had been offered him, but not legally tendered. Defendant further contended, and adduced evidence to support the claim, that sales made by agents were not approved by it until one-fourth of the purchase price had been paid, and that the written contract of the plaintiff, and the contracts of all other agents, as to commissions and the amount thereof, were modified, whereby agents selling farm lands (those claimed to have been sold by plaintiff were such) were to receive a commission of eight per cent. instead of ten per cent. payable four per cent. on payment of

one-fourth of the purchase price, two per cent. when the first deferred payment was made, and two per cent. when the second was made. Agents, however, were given the option to take a six per cent. commission in cash and in full of all commissions when one-fourth of the purchase price had been paid, but in no event was the agent entitled to any commission until one-fourth of the purchase price had been paid to the defendant. The defendant further contended, and adduced evidence to support the contention, that the purchasers,. or most of them, procured by the plaintiff were procured under the contract as modified. The plaintiff denied that the contract was so modified, or that he received notice of such modification, notwithstanding a partial settlement of accounts in recognition of such modification. The defendant further claimed, and adduced evidence to support the claim, that when the plaintiff produced the purchasers who had agreed to take lands at the agreed price of $7670 and $19,127,. the ability of the purchasers to pay was questioned by the defendant. Neither of such purchasers was able to pay one-fourth of the purchase price. The first was able to pay but $500; the second was not able to pay anything, unless he was able to sell other lands and some mining stock owned by him. If he was able to sell those, he was able to pay one-fourth of the purchase price; if unsuccessful in that he was not able to pay anything. Before the defendant entered into written contracts with those purchasers it was, as shown by the defendant's evidence, expressly agreed between the plaintiff and the defendant that as to those sales the plaintiff should not be entitled to any commission until one-fourth of the purchase price had been paid, and in proportion as paid, and that upon such express understanding and agreement, and not otherwise, did the defendant enter into the written contracts with those purchasers. The one who purchased at the agreed price of $7670 took possession, paid $500, and no more, then abandoned his contract and surrendered the premises. The defendant refunded him $175. The other who purchased at the agreed price of $19,127 paid nothing. He, with the assistance of the defendant and its agents, tried

to sell his lands and mining stock with the proceeds of which he had expected to make the first payment, but was unable to sell them. He thereupon paid nothing and abandoned and surrendered his contract with the defendant. The plaintiff did not claim that anything more was paid with respect to these sales, denied that he made any agreement as shown by the defendant, and contended that under his original contract a ten per cent. commission of the "agreed price" of $19,127 and $7670 was due him, or the sum of $2679. It was these transactions which chiefly gave rise to the controversy involved in the first count. With respect to other transactions controversies arose as to whether the plaintiff was entitled to a commission of ten per cent. as claimed by him, or six per cent. as claimed by the defendant. Much evidence was adduced by the parties with respect to these divergent claims and contentions.

At the conclusion of the evidence the defendant requested the court to direct a verdict in its favor. The court refused the request. It withheld the fourth count from the jury, and submitted the case to them on the first, second, and third. With the consent of counsel the court let the jury take the pleadings, and the bill of particulars which, on the defendant's demand, had been furnished by the plaintiff, to ascertain and determine the issues. Then, after charging them that the burden of proof was on the plaintiff, and that "each cause of action is to be considered on its own merits whatever they may be from the evidence," further instructed them:

"You are instructed that if you find from the evidence that the document marked 'Exhibit 1' dated November 1, 1909 (which was the written contract between the plaintiff and defendant referred to) constituted the only agreement between the plaintiff and the defendant company, then the claim of the plaintiff on the first cause of action as to commissions would be governed by that contract. But if you find from the evidence that such a contract was entered into and existed for a time, and was afterwards changed by mutual agreement for the mutual advantage of both parties then

whatever contract was finally in force when each particular transaction involved was carried on would determine the right of the plaintiff to a commission, if any, on that cause of action."

Complaints are made of the ruling refusing to direct a verdict and of the instruction last referred to. The complaint as to the first is without merit. The evidence, even on the part of the defendant, shows that it, on account of commissions, was indebted to the plaintiff in the sum of $26.45. So for that, if for no other reason, was the court justified in refusing to direct a verdict in favor of the defendant; for the plaintiff, as to that amount, was entitled to a direction of a verdict in his favor.

Now, as to the instruction. We think it erroneous and harmful. By it the jury were not only made the judges of the facts, but of the law. Under it they were required to find whether the written agreement constituted the agreement between the parties, and, if so, then were they told that the plaintiff's claim, as to the first cause of action, was to be "governed by that contract," leaving them to interpret it, to construe it, to apply it, as they saw fit, and to give it whatever effect they thought proper. If they found it was modified, then were they told that the contract as modified "would determine the right of the plaintiff to a commission," again leaving all questions of interpretation, construction, application, and effect of the contract to the jury, wholly unaided by the court, and permitting them to construe it and apply it as they saw fit, and to give such effect to it as they thought proper. Nowhere did the court give the jury for their guidance any principle of law whatever, except to instruct them that the burden of proof was on the plaintiff, and that they were the judges of the credibility of the witnesses and the weight of the evidence. For all the court did was to give the jury the pleadings and the bill of particulars to ascertain and to determine the issues for themselves, and then told them that if the written contract constituted the agreement between the parties, plaintiff's right to commission "was governed by that

contract;" if they found it was modified, then the contract as modified "would determine the right of the plaintiff to commissions." The court thus made the jury the judges of both the law and the facts.

"The terms of an oral contract must necessarily be ascertained from the testimony of the witnesses, and it is the duty of the court to instruct the jury as to the law applicable to the various phases asising upon such testimony. But where the court presents to the jury a particular view of the facts, and this embodies the terms of a contract which are in themselves precise and explicit, the court should declare their legal effect, and it would be error to leave this to be determined by the jury. In such a case the rule is the same as if the contract were in writing."

(*Spraggins v. White,* 108 N. C. 449, 13 S. E. 171.) The proposition is elementary. We had occasion to refer to it in the case of *Manti Savings Bank v. Peterson,* 30 Utah, 475, 86 Pac. 414, 116 Am. St. Rep. 862.

The charge is further objectionable and misleading because of the expression that if the contract "was changed by mutual agreement for the *mutual advantage of both parties.*" From that the jury may have believed that the contract, though modified as claimed by the defendant, was not to the plaintiff's advantage, because when so modified it was not as favorable to him as was the original agreement. This expression was especially misleading and harmful inasmuch as the jury were permitted, without guidance, to place their own interpretation on the contract as modified, if found to have been modified, and to give whatever legal effect to it they saw fit.

The judgment of the court below is reversed, and the cause remanded for a new trial. Costs to appellant.

McCARTY, C. J., and FRICK, J., concur.