D. D. WAGNER v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 15 April, 1908).

1. Railroads—Negligence—Passenger—Invitation to Alight—Platform—Warnings—Contributory Negligence.

It is *prima facie* negligence for a passenger to voluntarily ride on the platform of a rapidly moving train; and, while he has the right to presume that the next stop made after a station is called is at such station, the defendant is not liable in damages for his stepping from the train on a dark night under such circumstances, whereby the injury was incurred, when by being on the platform he was prevented from hearing the conductor call out that the station had not yet been reached and for the passengers to keep their seats.

2. Same—Evidence—Instructions.

When there is evidence that the plaintiff was negligent in his voluntarily riding upon the platform of defendant's train, and that by riding there he could not have heard the warning of the conductor for passengers to "keep their seats," etc., and in consequence the plaintiff stepped from the train on a dark night and was injured, it was error in the court below to omit to charge

thereon in his instructions to the jury upon the liabilities arising from the fact that the station had previously been called and the right of plaintiff to act upon the assumption that the next stop was his destination.

3. Same.

An instruction, based upon the evidence as to defendant's having placed notices in the car warning passengers from riding on the platform (Revisal, sec. 2628), is erroneous which leaves out an independent defense against the plaintiff's action that by so doing the plaintiff was prevented from hearing a warning called out in the coach, which would have prevented the injury.

4. Evidence—Burden of Proof—Admissions—Instructions—Issues.

While the burden of the issue is upon the defendant setting up contributory negligence as a defense, it was error in the court below to so instruct the jury when plaintiff's evidence established negligence on his part. Then the question becomes one of proximate cause alone, when there is evidence of defendant's negligence. (The question of appropriate issues in such cases discussed and proper issues suggested by CONNOR, J.).

HOKE, J., dissenting.

ACTION tried before *Neal, J.,* and a jury, at Fall Term, 1907, of EDGECOMBE.

Action for personal injury sustained by the alleged negligence of defendant.

The testimony tends to show that the defendant corporation owns and operates as a part of its system a railroad from Plymouth to Tarboro, N. C., for the transportation of freight and passengers; that as said railroad approaches Tarboro from the east it crosses a bridge over the Tar River and the low grounds thereof. Plaintiff's witness, Harris, who took measurements of the bridge, etc., says: "From stop post to beginning of trestle is 12 feet; from beginning of trestle to the bridge, 599 feet; width of the bridge, 9 feet 8 inches from guard rail to guard rail. Car steps would be over the guard rail. About a couple of inches of the guard rail would be showing. River bridge is 289 feet 7 inches. From end of bridge to crossing at Water Street, to center of street, 227 feet; from bridge to water, 35 feet 2 inches. It was low water. Total length from stop post to bank, 889 feet 3 inches.

Average height of trestle, 26 feet.   From the embankment to, the river there is swamp and undergrowth; trees on west side; no trees on east side.   When the road crosses Water Street the train stops to receive and put off passengers.   It is called 'Lower Tarboro.' "   On the second day of June, 1905, plaintiff boarded the local freight train at a station eight miles east of Tarboro, between 7 and 8 o'clock at night, as a passenger for Tarboro.   The train, with combination car and freight cars, was about 200 yards long.   He took a seat on the platform of the car.   One foot was on the lower step and one leg straight out.   The night was very dark.   Plaintiff was in the habit of riding on this train "two to four trips a week"; was working at stations below Tarboro.   He says: "The train blew for the crossing, then stopped for bridge, and just before getting to bridge the porter called out, 'Next stop Lower Tarboro.'   As the train pulled up again I was sitting on platform.   Train stopped again after pulling maybe 250 or 300 yards.   I had gotten up when train stopped.   When it stopped I got up and stepped off.   Porter was in the door by me when he called out, 'Next stop Lower Tarboro.'   He then went back in baggage car.   When it stopped I stood there a second or two.   I thought I would go to the upper depot, but thought of my wheel which I had left down town, and got off to get it. The train always stopped for the drawbridge.   It then pulled up and stopped at Lower Tarboro.   I never knew it to stop at this place before.   *   *   *   Conductor gave no notice that the train had not reached Lower Tarboro.   It looked so to me.   The light in the car was dim and blinded me.   I carefully looked before stepping."   He says: "I did not see anything there.   I got off in the swamp.   There were about six passengers on the car.   It was warm and I preferred riding on the platform."   Plaintiff says that it was his custom to ride on the platform.   No one spoke to him about it. Conductor knew he was on the train.   The flagman and porter knew he was on the platform.   He did not see any notice

posted in car. He was seriously injured. Plaintiff introduced several witnesses, whose testimony tended to corroborate him. Mr. Stewart, a witness for plaintiff, says: "There were plenty of seats; there was light in the car and the door was open. I don't think there was anything to prevent a man on the platform seeing between the cross-ties. On the steps near the end of the cross-ties a man could look down and see anything below. There was no light on the platform until conductor went out." Plaintiff says that he did not see conductor after he got on at Conetoe. Mr. Jenkins, a witness for plaintiff, testified that he had traveled on the car and with the door open and a light in the car. He thought a man could see that there was nothing between the cross-ties. Sam Taylor testified to same effect. Mr. Hill, the conductor for defendant, testified: "We stopped at the stop post at the drawbridge and pulled up again and waited for an extra we were to meet there. Everything was quiet. I told the passengers to keep their seats. We had been there five or ten minutes, when I heard a lumbering. A man was sitting behind me, and about that time some one said that somebody had fallen off the train, and it turned out to be Wagner. We had a plenty of seats. I did not hear any one call out, 'Next stop Lower Tarboro.' I had no porter." The flagman corroborated the conductor. Mr. Braswell, a passenger on the train, testified for defendant that he saw plaintiff sitting on platform before reaching the trestle and told him he had better go in, he would fall off, and plaintiff said he was where he generally rode. When the train stopped he heard the conductor say: "Keep your seats; you are not at Lower Tarboro yet." No passengers came out on platform when the train stopped. This witness said that plaintiff fell off—"he was not in a position to step off." The conductor testified that there were three signs in the car—one on each side and one on the end—which read: "Passengers are warned not to put their heads or arms out of the window or use the platform

except on entering or leaving the car." He further said: "I do not know how it read, but it was a warning to passengers not to use the platform or stand on it." W. I. Walker and L. A. Hinson, for defendant, testified to the same effect.

The foregoing sets forth substantially the facts upon which the rights and liabilities of the parties depend.

The defendant, at appropriate stages of the trial, moved for judgment of nonsuit and duly excepted to the refusal of the court to grant the motions.

The issues submitted to the jury presented the inquiry as to whether the plaintiff was injured by the negligence of defendant, as alleged, and whether plaintiff was guilty of negligence which contributed to the injury. There was a verdict for plaintiff, with an assessment of damages. Judgment and appeal. The defendant's exceptions are set forth in the opinion.

*Gilliam & Gilliam* for plaintiff.
*F. S. Spruill* and *John L. Bridgers* for defendant.

CONNOR, J., after stating the facts: Eliminating all immaterial and corroborative testimony, there is but little controversy respecting the facts. Plaintiff got upon defendant's train at a station eight miles east of Tarboro, between 7 and 8 o'clock in the evening of 2 June, 1905, and took his seat on the platform of the combination car, "with one foot on the bottom step and the other leg straight out." There were "plenty of seats" inside the car, and plaintiff sat on the platform because it was warm and he preferred riding there. There is no evidence that the conductor knew he was on the platform, although plaintiff says that "he knew I was on the train." The porter knew that plaintiff was on the platform. Plaintiff made "two to four trips every week; he was working at Parmele, Bethel and Conetoe," towns below Tarboro. As the train reached the stop post at the approach to the trestle and bridge over the low grounds and the river it

stopped. As it moved forward the porter called out, "Next stop Lower Tarboro," and passed into the baggage car. By reason of an excursion train on the other or Tarboro side of the river going into a siding, the train, being an accommodation freight "about 150 or 200 yards long," stopped on the trestle side about 250 or 300 yards from the stop or the post. The entire length of the trestle and bridge is 889 feet. From stop post to bridge is 611 feet. Before reaching the river the trestle is about 16 feet high. The conductor and other passengers were inside the car and remained therein. Up to this point the only matter in regard to which there is any controversy is the call by the porter, "Next stop Lower Tarboro." We assume, for the purpose of this decision, that plaintiff's version is correct. The conductor, who was inside the car with the other passengers, swears that when the second stop was made he said: "Keep your seats; we are not at Lower Tarboro yet." One passenger in the car corroborates the conductor; two others say they did not hear him say anything. One of the latter says that he did not hear either call.

The defendant's witnesses testify that notices warning passengers from riding on the platform were posted inside the car. Plaintiff says that he never saw them; that it was his custom to ride on the platform. He also says that his residence was "near upper depot, about 300 yards to the west." He was uncertain whether to get off at Lower Tarboro, but decided to do so because he had left his wheel there. There is no evidence that he had a ticket or that conductor or porter had any notice that he would get off at Lower Tarboro or that any other passenger wished to do so. The night was dark. Plaintiff says that he stood up, looked carefully, thought he was at Lower Tarboro; that it was very dark; he could not see that the train was on the trestle, and stepped off, falling to the ground and sustaining serious injury. Stewart, plaintiff's witness, says: "About the time the train stopped the second time I heard somebody say 'Hello!' and I heard

a noise of something hitting the ground, and we all knew
some one had fallen off, and somebody said it was Mr. Wag-
ner, the contractor from Tarboro." His son, J. W. Stewart,
testified to the same. Hinson and Braswell, for defendant,
say that plaintiff fell off. Mr. Stewart and other witnesses
for plaintiff testified to effect of light from car upon the cross-
ties. It is undoubtedly true, as contended by plaintiff, that
"the announcement by the conductor or other train employee
of the station the train is approaching is the customary warn-
ing to passengers that the train is nearing the station, in order
that they may get ready to alight. When a station is called
the passengers have the right to infer that the first stop of the
train will be at such station, and when the train is stopped it
is an invitation to the passenger to alight." Moore on Car-
riers, sec. 34; Elliott on Railroads, sec. 1628, and many other
authorities cited in plaintiff's brief. It will be observed,
however, in the cases cited the passenger was inside the car
at the time the announcement was made, and in consequence
of it went upon the platform to alight. This case is compli-
cated by the fact conceded by plaintiff that he was voluntarily
riding on the platform, there being "plenty of seats" on the
inside of the car. It is not alleged nor is there any sugges-
tion that it was negligent on the part of defendant to stop the
train on the trestle. This was evidently necessary to permit
another train to clear the track by going into a siding. The
alleged and the only possible negligence was in the failure of
the conductor, if there was such failure, or of some other
employee, to notify plaintiff that the train had not reached
Lower Tarboro. It was their duty to give such notice to
passengers who were inside the cars. It may, under some
circumstances, have been the duty to give such notice to per-
sons standing or riding on the platform. If, for instance, the
conductor or the porter knew that plaintiff, although negli-
gently riding on the platform, intended alighting at Lower
Tarboro, it would have been their duty to notify him. We

find no evidence that either of them had such knowledge or that the plaintiff himself had determined to stop there when he got on the train. He says that when the train stopped he stood a second or two. He thought he would go to the upper depot, but thought of his wheel, which he had left down town, and got off to get it. He lived near the upper depot. It does not appear that it was his habit to stop at the lower depot. We find nothing in the evidence imposing upon the conductor or porter any other duty to plaintiff than that which they owed to passengers inside the car.

Omitting for the present any reference to the alleged notices in the car, we proceed to consider the rights and duties of the parties in the light of the admitted facts. In *Goodwin v. Railroad,* 84 Me., 203, it was shown that plaintiff's intestate got upon the platform of the defendant's car; that the conductor took his ticket and made no objection to his riding there; that the car was crowded, although there was ample standing room inside; that the weather was warm; that in going around a curve he was thrown from the platform and killed. In an action for damages *Emery, J.,* says: "The danger of standing on the narrow platform of a passenger car while the car is moving with the usual speed of railroad trains is most conspicuous. No prudent man, no man ordinarily mindful of his conduct and of matters about him, would occupy such a position." Referring to the reasons suggested for riding on the platform, the Judge says: "All these circumstances may have made it more agreeable to ride on the platform in the open air than to stand inside the hot, crowded car, but they did not in the least lessen the danger nor the appearance of danger in so doing. That Goodwin was not ordered off the platform could not have led him to believe it was safe to ride there. He needed no warning of such a danger. He knew the place for passengers was inside the car. * * * Within the car, with all its discomfort, was safety. Without the car was obvious peril." In *Fletcher v. Railroad,*

187 Mass., 461, it appeared that plaintiff was in the car.   He left his seat some time before reaching his destination, went into the baggage compartment and engaged in conversation with a baggagemaster, who, when the train approached it for the purpose of stopping, called the station at which the plaintiff was to alight.   After this, as the train was moving slowly, the plaintiff left the car and stood on the first of four steps that led from the platform of that end, and while in this position the steps came into collision with a truck and he was injured.   The court said: "Plainly, if he had remained in the car until the train stopped this damage would have been avoided, but he voluntarily left a place provided for him as a passenger, and where he would have been safe, and exposed himself to the chance of injury which common experience has shown is incident to standing upon the platform of a moving railroad car."

In *Clark v. Railroad Co.,* 36 N. Y., 135 (93 Am. Dec., 495), *Grover, J.,* said: "The negligence alleged against the plaintiff was that at the time of receiving the injury he was standing on the steps of the front platform of the car, it appearing that he would have escaped the injury either inside the car or upon the platform.   In the absence of any explanation I should have no hesitation in saying that this position of the plaintiff at the time of the injury proved that he was negligent."   In that case the evidence showed that the car was crowded.   The question of negligence under the circumstances was left to the jury.   In the note to this case it is said: "When a person is injured while riding in a dangerous position upon a railroad car he is *prima facie* guilty of negligence which will bar recovery, and the burden is on him to show the injury was not the result of his negligence."   Fetter on Carriers of Passengers, sec. 167, says: "By the weight of authority it is negligence, as matter of law, for a passenger to be upon the platform of a rapidly moving train, unless he is compelled to assume such position as the best he could do at

the time, acting as a careful and prudent man." Elliott on Railroads, 1630. We are of the opinion that, taking plaintiff's testimony to be true, he was negligent, as a matter of law, in riding upon the platform in the manner described by himself. The question, therefore, involved in the first issue is, assuming that the porter called the station and that the conductor failed to notify the passengers inside the car that the train had not reached Lower Tarboro when it stopped on the trestle, Was such failure the proximate cause of the plaintiff's injury? In other words, if the jury should find that, if the conductor had made the announcement sufficiently loud to be heard by those inside the car, the plaintiff, being on the platform, could not have heard it, was such failure the proximate cause of the injury? While it is true that the authorities cited and many others examined by us relate to injuries sustained by persons thrown from the platform while the car is in motion, we can perceive no difference in principle in a case wherein the plaintiff by voluntarily riding on the platform alights from a train at a time and place which if he had been inside the car he would not have done. In both cases he is guilty of negligence, and if but for such negligence he would not have sustained the injury he cannot recover. The pivotal question, therefore, upon the first issue is, Was the plaintiff injured by the negligence of the defendant? And this involves two propositions—that defendant was guilty of a breach of duty to plaintiff, and that by reason thereof he was injured. As we have seen, the duty which defendant owed plaintiff was to give notice inside the car that, notwithstanding the announcement of the porter, the train had not reached Lower Tarboro. If the jury found that the notice was given they should have answered the issue "No." If they found, as we presume they did, that such notice was not given, the question was presented whether the failure to give it was the proximate cause of the plaintiff's injury; that is, had he placed himself in such a position that he could not have heard it if given

sufficiently loud to be heard by those inside the car? This was a question for the jury. It was involved in the first issue upon the essential element of proximate cause of plaintiff's conduct.

This brings us to a consideration of his Honor's instructions. After correctly stating some of the general principles involved in the case, he read the issue and said: "If the jury shall find as facts from the greater weight of the evidence that the conductor, brakeman or other servant of the defendant company whose duty it was to make such announcement called out in the hearing of the passengers and while the train was yet in motion, 'Next stop Lower Tarboro,' and very soon thereafter the train came to a full stop; and if the jury shall further find that such announcement and stopping of the train under the circumstances was reasonably calculated to lead an ordinarily prudent and careful man to believe that the train had in fact reached and stopped at Lower Tarboro for the discharge of the passengers; and, further, that the plaintiff honestly believed from such announcement and stopping that the train had reached Lower Tarboro and the place where he was to get off, and in this belief he attempted to get off the train and in so doing, without negligence on his part, fell from the trestle and injured himself, then you will answer the issue (first) 'Yes.' " Defendant excepted.

The instructions, containing a complete proposition, concluding with a direction to find a verdict for plaintiff if the jury found the facts involved in the proposition, omits any reference to plaintiff's position on the platform and its effect upon his conduct with reference to stepping off; it also omits any reference to the testimony in regard to the alleged notice by the conductor to passengers inside the car, and withdraws from the jury the pivotal question of the proximate cause of the conduct of plaintiff, making the answer to the issue to depend upon the call by the porter and upon plaintiff's belief that the train had stopped at the station and his care in step-

ping off. The jury may well have found all of these conditions without concluding that the plaintiff was injured by defendant's negligence. There was evidence tending to show that the conductor gave the notice. It is true that it was controverted, but the defendant was entitled to have it submitted to the jury upon the issue. There was evidence that none of the passengers inside the car attempted to get off. The first issue could not be answered until either the court, as a matter of law, or the jury, as a matter of fact, found upon all of the evidence relating to the subject that there was negligence on the part of defendant, and that such negligence was the proximate cause, the *causa causans,* of the injury. In other words, conceding all of the testimony on behalf of plaintiff and so much of defendant's evidence as tended to sustain plaintiff's contention to be true, would plaintiff have been misled by the announcement of the porter and the failure of the conductor to give the notice inside the car if he had not been voluntarily on the platform? Viewed from any and every possible point of view, the plaintiff's right to have the first issue found for him depends upon the answer to this question. Assuming that it is upon the evidence a question for the jury, his Honor inadvertently took it from them in the instruction and made the answer to the issue to depend upon other findings. As we have seen, the plaintiff was negligent in being on the platform, and he was injured while in that position. The burden is upon him to show that his injury was caused by the negligence of defendant. But one negligent act or omission of duty is charged—failure to give the notice that the train had not reached Lower Tarboro. The question, therefore, is, Was there an omission of duty; if so, was it the proximate cause of the plaintiff's conduct whereby he was injured? Any instruction concluding with a direction to answer the issue should present these questions to the jury. His Honor said to the jury in this instruction, if plaintiff, "without negligence on his part," etc. The jury may have understood his

Honor to refer to them the question whether being on the platform was negligence.    It may be that his Honor was referring to the manner in which he stepped off.·  His Honor should have told the jury that being voluntarily on the platform was *per se* negligent.    It is true that his Honor, in another part of the charge, said to the jury: "It may be that the plaintiff, Wagner, heard a porter or some other authorized servant of the company announce, 'Next stop Lower Tarboro,' and still he might not be entitled to a recovery, and for the following reasons:  The statute, the aid of which is invoked in this case, reads": [Reads section 2628, Revisal].    "It was plaintiff's duty to be on the inside of the car.    If you find from the evidence that the plaintiff was on the platform, that he heard the announcement that he says he heard, yet, if you further find from the evidence that the conductor, Hill, announced, 'This is not Lower Tarboro; keep your seats,' or 'hold your seats,' loud enough for the passengers, whose duty it was to be on the inside of the car, to hear it, and the plaintiff, being on the outside of the car, did not hear it, then the railroad company would not be liable, and you ought to answer the first issue 'No.'    The statute is made for the protection of passengers as well as for the railroad company."    This instruction was given upon the contention advanced by defendant that in compliance with the statute notices warning passengers not to ride on the platform were posted in the car.    It involved the proposition, in regard to which there was controversy, that the notice required by the statute had been posted.    It had no relation to the instruction to which the exception is pointed. The defendant was making this as an independent contention. His Honor in this instruction imposed upon the defendant the duty not only to comply with the statute by posting the notice, but that the conductor give the notice inside the car. This instruction did not cure the error involved in the other.

There are a number of other exceptions in the record, but one of which we deem it necessary to discuss, as they may not

arise upon a second trial. His Honor, upon the second issue, instructed the jury: "The burden of this issue, contributory negligence, is upon the defendant company; that is, the defendant is required to prove by the greater weight of the evidence that the plaintiff was guilty of negligence and that such negligence was the proximate cause of the injury, in order for you to answer the issue (second) 'Yes'; and so, unless the defendant has shown by the greater weight of the evidence that the plaintiff was guilty of negligence, and also that such negligence was the proximate cause of the injury sustained by him, then the jury will answer the issue (second) 'No.'" Defendant excepts to this instruction because the jury are told that it is required to show by the greater weight of the evidence that the plaintiff was guilty of negligence, whereas his Honor should have instructed them as a matter of law upon plaintiff's own testimony that he was guilty of negligence, leaving only the question of proximate cause to them. It is elementary that the burden is upon the defendant to show contributory negligence, but it is equally true that if upon plaintiff's own evidence he shows negligence as a matter of law the question should not be left to the jury. It is the same as if defendant had by its own evidence shown negligence; the plaintiff would have the benefit of an instruction to that effect, leaving the question of proximate cause to be decided either by the court or jury, as the evidence makes proper. We have deemed it best not to discuss the exceptions directed to the instructions, refused and given, regarding the effect of section 2628, Revisal. The correct construction of the statute is not clear, and in this case the questions arising upon it are not clearly presented. It may be well, upon a second trial, if the defendant desires to present this defense, to set it up clearly in the answer, to the end that an issue may be presented in regard to the notice in the car. The construction of the statute has been before this Court in only one case (*Shaw v. Railroad,* 143 N. C., 312), in which there was a

dissenting opinion concurred in by two justices. The question of its application to a passenger who alights from a train under the circumstances attending this case presents interesting lines of thought. While we do not hold that it is necessary for the defendant to plead the statute as an affirmative defense, it will be observed that the nonliability of the carrier, when it is relevant, cannot well be presented under the general issue. It may be that if the facts bring the case within its language the fact that the passenger was injured "while riding on the platform of the car   *   *   *   in violation of the printed regulations posted," etc., confers immunity upon the carrier. How the words "riding on the platform" are to be construed in the light of the plaintiff's evidence, and to what extent this position of the plaintiff must contribute to his injury, are interesting questions. It is doubtful whether the language of the statute clarifies the subject. It seems to have been copied from other States. The somewhat variant views of the Court are set out very clearly in *Shaw v. Railroad, supra.* It is impossible for us to say what, if any, effect was given the statute in the trial of this case. We have not thought it necessary to discuss several other questions more or less clearly presented, because they may not arise upon a second trial. We must not be understood as intimating any opinion regarding the condition of the depot at Lower Tarboro, about which there is considerable evidence. If railroad companies, either for their own or for the convenience of their patrons, establish *quasi* depots or stopping places, they must make them safe—provide lights at night. The courts cannot relax the rule imposing this imperative duty. It is better to suffer some inconvenience than endanger life and limb. *Ruffin v. Railroad,* 142 N. C., 120. We do not perceive any connection between the condition of the depot at Lower Tarboro and plaintiff's injury. For the errors pointed out there must be a

New Trial.