Civil Action. The plaintiff was employed by the defendant as a switchman, and, on 3 June, 1913, he was ordered as one of the switching crew to cut out a car in a train which had been made up at Rocky Mount, N.C. and was then ready to proceed on its journey to Florence, S.C. The car, on inspection, after the train had been made up, was found to be in bad condition, and for this reason was ordered to be cut out. While engaged in this duty, the plaintiff was injured, his left foot being crushed, and for the injury thus sustained he brought this action. In performing his duty, plaintiff was required to stand on the rear footboard of the switching engine. Fourteen cars at the rear of the train were uncoupled and carried by the switching engine to a side-track. The engine then returned to the track where the other cars were standing and was backed to the end of the car which was to be cut out, and while attempting to make the couplers between the engine and car, the plaintiff's foot was caught between the bumpers of the engine and car and crushed, as above stated. It is alleged, and there was proof to sustain the allegation, that this injury to the plaintiff was caused by a defect in the footboard of the engine and defects in the coupling, that is, in the draw-heads, lock pins, and lift levers. Defendant alleged that the injury was caused by the negligence of the plaintiff in making the coupling, and especially in unnecessarily placing his left foot in a dangerous position, of which there was some evidence. Two surgical operations were performed on plaintiff's foot. Defendant alleged, with proof to sustain the contention, that the second operation, when the leg was amputated, was not caused by its negligence, but by the unskillfulness of the first operation alone. There was evidence that the second operation was necessary, the surgeon, Dr. Carnegie, who performed it, testifying: "It was impossible for me to straighten the heel out so he could walk, and it necessitated putting the stump on the floor when walking, due to contraction of heel. He was bound to have suffered considerably, as there was no pad except a skin flap; it was impossible for that to give enough cushion to prevent him having pain."
"Q. From what you say of the plaintiff's injury, after examining the limb, do you find the second operation necessary? A. Yes; it was absolutely necessary."
Defendant tendered in apt time the following issues:
1. Was the plaintiff injured by the negligence of the defendant company?
(449) 2. Did the plaintiff, by his own negligence, contribute to his own injury? *Page 521 
3. Did the plaintiff voluntarily assume the risk of the injury and hurt sustained by him?
4. What damages, if any, is the plaintiff entitled to recover?
The court refused to submit the issues, and defendant excepted.
The jury returned the following verdict:
"Was the plaintiff injured by the negligence of the defendant company, as alleged in the complaint? Answer: Yes."
"If so, what damages has plaintiff sustained? Answer: $5,000."
Defendant requested the following instructions:
1. In considering the question of damages, you will not consider at all the shock and effect due to the second operation, nor effect, pain, or suffering caused by or consequent upon the second operation.
2. While the law is that contributory negligence will not prevent a plaintiff from recovering for personal injury the law does allow and require the jury to diminish the damages in proportion to the amount of negligence attributable to the plaintiff in causing the injury.
The court charged the jury as follows:
1. The transaction in which the parties were engaged at the time of the alleged injury being an operation of interstate commerce, the rights and obligations of the parties are governed by the Federal law which imposes upon the defendant the absolute duty of equipping its engines and cars with automatic couplers and to exercise the degree of care which has been heretofore defined to you as proper care, and to have and to keep such couplers in suitable repair and condition so they will at all times be automatic in their operation; that is to say, that they will couple by impact.
Defendant excepted, contending that this is not applicable to the facts.
2. You will consider the first issue without regard to any question as to whether the plaintiff was using his foot or his hand or both, in trying to effect a coupling, if a defect in the engine coupler, which was due to the negligence of the defendant, contributed to the plaintiff's injury as a proximate cause of it, as no contributory negligence of the plaintiff would defeat his recovery.
Defendant excepted, contending that this is not applicable to the facts.
3. But even though you should find the defendant negligent in respect to the condition of the coupler, such negligence could not be deemed to have contributed to the plaintiff's injury, if his injury resulted from his using his foot in an operation not reasonably related to the alleged defective condition of the coupler on the engine, such, for instance, as pushing the draw-head into the alignment with the coupler on the engine. (450) *Page 522 
The defendant excepted to this, contending that the instruction is not applicable to the facts.
4. Nor can you take into consideration any pain or suffering or disability which may have resulted from the second operation and amputation, unless the jury are satisfied by the greater weight of the evidence that said second operation and amputation were necessary consequences of the injury alleged to have been sustained by him on account of the negligence of the defendant.
To this the defendant excepted, for that it was erroneous.
Judgment was entered upon the verdict and defendant appealed, after reserving its exceptions.
After stating the case: We have arranged the statement of the case so as to present only so much of it as relates to the defendant's assignment of errors. The court instructed the jury that if they did not find that the coupler was defective they would answer the first issue "No," and if they found that it was defective, they would still answer the issue "No," unless they also found that the defect was due to the defendant's negligence in failing to exercise proper care in the inspection and repair of the coupler, which contributed proximately to the plaintiff's injury. The record shows that "the court stated fully the contentions of the parties and reviewed the evidence bearing upon the same." There are four questions presented in defendant's exceptions:
1. Did the court err in holding that this was a transaction of interstate commerce to which the Federal laws applied?
2. Was it competent for the jury to consider additional suffering or shock caused by the second surgical operation?
3. Was it proper for the court to refuse to submit the issues tendered by the defendant and thereby withdraw the questions of assumption of risk and contributory negligence from the jury?
4. Was there any affirmative error in the charge?
1. The first question may be well disposed of by a bare reference to the evidence. The witnesses, both for plaintiff and defendant, agreed in their testimony that the train in which was, what is called in the case, the "bad order car" had been made up, as an extra train, at South Rocky Mount, N.C. and was then ready to proceed to Florence, S.C., when the defect in one of its cars, there being forty-five in all, was discovered and that car was removed from the train. The engine which was to carry the train to Florence, S.C., had steam up and R. C. Garland, the engineman, was in the cab, and moved the train under *Page 523 
signals from the plaintiff. This would seem to properly characterize (451) this train as one engaged in interstate commerce, and while the plaintiff was employed on a local shifting engine, any injury to him through the negligence of the defendant, while he was engaged in cutting out the "bad order car" from this train, is regarded in law as one received while he was "employed in such commerce." This view of the question is sustained by Pedersen v. D. L. and W. Railroad Co., 229 U.S. 146, from which we extract the following principles:
1. Under the Federal law a right of recovery exists only where the injury is suffered while the carrier is engaged in interstate commerce and while the employee is employed in such commerce; but it is not essential that the coemployee causing the injury be also employed in such commerce.
2. One engaged in the work of maintaining tracks, bridges, engines, or cars in proper condition after they have become, and during their use as, instrumentalities of interstate commerce, is engaged in interstate commerce, and this even if those instrumentalities are used in both interstate and intrastate commerce.
3. An employee carrying materials to be used in repairing an instrumentality of interstate commerce is engaged in such commerce, and, in this connection, it was held that such an employee carrying bolts to be used in repairing an interstate railroad, and who was injured by an interstate train, is entitled to sue under the Federal law in regard to an employer's liability, it being the act of Congress of 1908, the true test being: Is the work in question a part of the interstate commerce in which the carrier is engaged?
It follows, therefore, that if the train described in this case was engaged in interstate commerce, the act of the defendant in cutting out the "bad order car" was performed by him while employed in such commerce, for the two cases, in principle, at least, are clearly analogous. This will appear by a consideration of the language of the Court in the Pedersencase, where Justice Van Devanter said: "The statute now before us proceeds upon the theory that the carrier is charged with the duty of exercising appropriate care to prevent or correct "any defect or insufficiency . . . in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment" used in interstate commerce. But independently of the statute, we are of opinion that the work of keeping such instrumentalities in a proper state of repair while thus used is so closely related to such commerce as to be in practice and in legal contemplation a part of it. The contention to the contrary proceeds upon the assumption that interstate commerce by railroad can be separated into its several elements and the nature of each determined regardless of its relation to others or to the business as a whole. *Page 524 
(452) But this is an erroneous assumption. . . . Of course, we are not here concerned with the construction of tracks, bridges, engines, or cars which have not as yet become instrumentalities in such commerce, but only with the work of maintaining them in proper condition after they have become such instrumentalities and during their use as such."
The question then recurs: Was this train, at the time of the injury, being used in interstate commerce? We are of the opinion that an affirmative must be given to this question, if we follow, as we are required to do, the decisions of the highest Federal court in N.C.Railroad Co. v. Zachary, 232 U.S. 248, 260, and the cases therein cited, especially St. Louis and San Francisco Ry. Co. v. Seale, 229 U.S. 156,161. In the Zachary case the engineer, after inspecting, oiling, firing, and preparing his engine for starting on a trip from Selma, N.C. to Spencer, N.C. was killed by an engine of defendant railroad company which was being negligently moved on one of its tracks and while he was crossing the track on his way to his boarding-house for supper. The train was to carry interstate cars, which came from Virginia, but they had not been coupled up at the time of the injury. It was held that he was at the time employed in interstate commerce and his case was governed by the Federal law, although he had merely prepared his engine and cars for the journey, but had not moved them from the station. In the case of Railway Co. v.Seale, supra, the injury occurred while the employee, who was a yard clerk, was engaged in the duty of inspecting and making a record of car seals and of checking the cars with the conductors' lists. While he was going to a train which had come from another State to perform this kind of work, he was struck and fatally injured by a switch engine, which, as was claimed, was being negligently operated by the defendant railway company. With reference to these facts the Court said in 229 U.S. at p. 161: "The interstate transportation was not ended merely because the yard was a terminal for that train, nor even if the cars were not going to points beyond. Whether they were going further or were to stop at that station, it still was necessary that the train be broken up and the cars taken to the appropriate tracks for making up outgoing trains or for unloading or delivering freight, and this was as much a part of the interstate transportation as was the movement across the State line," citing McNeillv. Southern Railway Co., 202 U.S. 543, 559, and Johnson v. So. Pac. Co.,196 U.S. 1, 21.
If the breaking up of a train which has come from another State is a part of interstate commerce, we do not perceive why the making up of the train, its inspection and proper repair are not equally acts of interstate transportation. See, also Railway Co. v. Lindsay, 233 U.S. 42. *Page 525 
In Ill. Cent. Railroad Co. v. Behrens, 233 U.S. 473, while (453) not deciding the question, it is strongly intimated, at the close of the opinion, that an employee engaged in work such as was done by the plaintiff in this case would be considered as engaged in interstate commerce and protected by the Federal Employer's Liability Act and the Safety Appliance Act as well. Johnson v. Great Northern Ry. Co., 178 Fed. Rep., 643. We have again discussed this question somewhat at length, not only because of the zeal and earnestness with which the contrary view from ours was pressed upon our consideration, but because of its growing importance in a large number of cases. Our opinion is, though, that it is settled adversely to the defendant's contention in Lloyd v. Railroad Co.,166 N.C. 24. The two cases are identical in their facts, so far as this point is concerned, and if Lloyd's case stands the test of the higher court to which it has been carried by writ of error, it will be thoroughly decisive of the question we have discussed, and in respect to the view we have taken of it. But if the plaintiff was not, at the time of the injury to him, employed in interstate commerce, as the alleged negligent wrong was committed since chapter 6 of Public Laws of 1913 was enacted (3 February, 1913), that is, in June, 1913, the case is governed by the provisions of that law, which are identical, substantially, at least, with the Federal Statute, and in this view the question may be considered of little practical importance, as was held in C. N. Railway Co. v. Gray, 35 Supreme Court Reporter, p. 620. Under the State law, assumption of risk is not available to the defendant, as the injury was caused by a defect in appliances, and contributory negligence is treated in the same manner as under the Federal statute.
2. This also disposes of the third question we have stated, which involves the correctness of the ruling by which the court refused to submit the issues tendered by the defendant. The jury having found that the plaintiff was injured by a defective coupling, the defenses of assumption of risk and contributory negligence were eliminated, both under the Federal and State law.
3. The second question raised by defendant, that it was not liable in damages for any increased injury resulting from the second surgical operation, is, we think, without merit, in the view we take of the record. The prayer of the defendant would require the court to instruct the jury that in no view of the case was it liable for such additional injury, whereas its liability depended upon whether the second operation was made necessary by defendant's negligence as a proximate result thereof or was caused solely by the unskillful manner in which the first operation was performed. The court instructed the jury that it must have been a necessary consequence of the injury which resulted from the defendant's negligence. Defendant has no reason to complain (454) *Page 526 
of this instruction, for it was as favorable to it as could be expected, and moreover it implied that if the additional pain and suffering were caused solely by the unskillfulness of the surgeon who performed the first operation, defendant would not be liable therefor.
4. We can see no error in the charge of the court. It properly instructed the jury that if the injury was caused by a defect in the coupler due to defendant's negligence, contributory negligence of the plaintiff would not defeat his recovery. This is correct, as it is so expressly provided in the Federal Employer's Liability Act and our statute of 1913. And the same may be said as to assumption of risk, as the two defenses, in this respect, are subject to the same principle under the Federal statute, as will appear by reference to sections 3 and 4 of the said act of Congress. As to assumption of risk, similar provision is made by our law. Public laws 1897, ch. 56 (Revisal, sec. 2646). Elmore v. R. R.Co., 132 N.C. 865.
After a careful review of the case, we find that no error was committed by the court at the trial of the case.
No error.
Cited: West v. R. R., 174 N.C. 127; Lane v. R. R., 192 N.C. 291; Smithv. Thompson,210 N.C. 676; Bost v. Metcalfe,219 N.C. 609.