STACY, C.J., dissenting.
Action to recover damages for personal injuries. Plaintiff alleges that his injuries were caused by the negligence of defendant, in that defendant negligently failed to furnish him a safe place at which to alight from defendant's train, on which he had been riding as a passenger, and also a safe place along which to walk after he had alighted from said train, to defendant's station; defendant denies the allegations of negligence, and pleads in bar of plaintiff's recovery, his contributory negligence; defendant alleges that plaintiff had a weak knee at the time, and that with knowledge of this fact, plaintiff carelessly and negligently walked along side its moving train; that while thus walking, plaintiff, because of his weak knee, fell towards the moving train, with the result that he was injured.
The evidence for the plaintiff tended to show the facts to be as follows:
On the night of 17 August, 1924, plaintiff was a passenger from Pine Level to Selma, on defendant's west bound train, from Goldsboro to Greensboro, N.C. This train arrived at Selma at about 11 p. m.; when the train was stopped for the discharge of passengers at Selma, the car in which plaintiff was riding stood 40 to 50 yards east of the Union Station, which is located on the west side of the Atlantic Coast Line track, running north and south, at its intersection with defendant's track, running east and west. The station is immediately to the north of defendant's track. Plaintiff with other passengers for Selma, left the car and began to walk beside the train, on the north side of defendant's *Page 289 
track toward the Union Station. Plaintiff knew the physical conditions beside defendant's track from the place at which he left the car to the station; there was a ditch, as plaintiff well knew, just off the walkway, provided for passengers, extending toward the station. There were lights at the station, but none at the point where plaintiff was required to alight, and none on the walkway on which he was required to walk toward the station. It was dark, and plaintiff could not see the ditch, or the ground on which he was walking. He was the last passenger to leave the car. Soon thereafter the train began to move, and plaintiff, walking in the darkness, with knowledge that there was a ditch just off the walkway, stumbled and fell toward the moving train; his left hand struck the iron rail of defendant's track and was cut off by the wheels under the cars of the moving train.
Defendant offered evidence tending to show that plaintiff left the car in which he had been riding as a passenger at the usual place at which passengers for Selma alighted; that the walkway to the station was constructed of dirt and crushed stone, and was hard and level; that the lights from the station and from the cars were sufficient to enable plaintiff to see the ground upon which he was walking and the moving train; and that plaintiff had wrenched his knee some time prior thereto and that it was then weak, causing him to stumble and fall while walking toward the station.
The issues submitted to the jury were answered as follows:
1. Was the plaintiff, Otis Lane, injured by the negligence of defendant, Southern Railway Company, as alleged in the complaint? Answer: Yes.
2. Did the plaintiff, Otis Lane, by his own negligence contribute to his injury as alleged in the answer? Answer: No.
3. What damages, if any, is the plaintiff entitled to recover of the defendant? Answer: $15,000.
From the judgment upon this verdict defendant appealed.
Plaintiff, testifying as a witness in his own behalf, exhibited to the jury his left hand. All of the hand, except the thumb and index finger, had been cut off. He had testified that this was the result of the injury which he had sustained when he stumbled and fell while walking, in the dark, on the unlighted walkway provided by defendant for passengers, beside its moving train toward the Union Station. His hand had struck against the track and had been crushed by the wheels under the train. Immediately after the injury, plaintiff *Page 290 
was taken to the local surgeon of defendant for treatment. This local surgeon took plaintiff to the hospital at Smithfield, N.C. where his wounded hand was treated. Two of his fingers had been cut off at the time of the injury; the little finger was cut off by the surgeon at the Smithfield Hospital. After remaining at the Smithfield Hospital for ten days, plaintiff, who was a soldier in the United States Army, went to the hospital at Fort Bragg, near Fayetteville, N.C. where his injured hand was again treated.
Plaintiff testified as follows: "Just as soon as I got there, they took the scissors and cut the dead skin off and grafted some skin from my side. They took the skin off my side twice, and it took 59 stitches to sew it up. The skin on my hand as grafted isn't as tough as the other. It is just as easy to skin as can be. When it is skinned, it does not heal up so easily; it takes a long time to heal up. Some skin was grafted also from my thigh at a different time from the grafting from my side. I suffered bad pain at the time of and after the injury, and on account of the injury. I also suffer now. Every time I work any it hurts. Every time I go to work now something in my eye draws it to one side. The pain comes in my right side once in a while, and hurts at the point where the grafted skin was taken off."
In apt time defendant objected to all the testimony relative to the grafting of skin from plaintiff's side and thigh, and to the pain caused thereby, and assigns as error the refusal of the court to sustain these objections. Defendant contends that such testimony should have been excluded, for that in no event can it be liable for damages resulting from the grafting of skin by a surgeon upon plaintiff's body, at least in the absence of evidence that this was a necessary or proper treatment of the injury to plaintiff's hand; that such damages were not caused by any act of defendant.
The broad general rule, with respect to compensatory damages, which are given as the pecuniary equivalent for the injury done, is that the wrongdoer is liable to the person injured for all the natural and direct or proximate consequences of his wrongful act or omission; subject to certain qualifications and exceptions, not applicable to the instant case, he is liable only for such consequences. This rule is applicable in cases both of contract and of tort. 17 C. J., 728. In the case of torts, the general rule is that the wrongdoer is liable for any injury which is the natural and probable consequence of his misconduct. Such liability extends not only to injuries which are directly and immediately caused by his act, but also to such consequential injuries, as according to the common experience of men, are likely to result from such act. 17 C. J., 750. *Page 291 
Where an intervening act of a third party, not connected with or related to, but independent of the act or omission of the wrongdoer, results in damages, distinct from the damages resulting from the first wrongful act or omission, the original wrongdoer cannot be held liable for such additional or increased damages; but where such intervening act, whether wrongful in itself or not, is made necessary or proper because of the act of the wrongdoer, he is liable for the additional or increased damages, resulting therefrom, upon the principle that such damages are the natural and probable consequences of his act. Balcum v. Johnston, 177 N.C. 213, and cases cited. It is uniformly held to be the duty of one who has suffered a personal injury by the negligence of another, to exercise due care to mitigate the damages by having his injury treated by a physician or surgeon, if the nature of the injury is such as reasonably to require medical treatment or a surgical operation. See Brewington v. Loughran,183 N.C. 558, for statement by Stacy, J., of the principle as applicable to damages recoverable for breach of covenant in a rental contract. Johnson v.R. R., 184 N.C. 101, and cases cited. If the injured person exercises due care to have the injury properly treated, the result of the treatment, if not beneficial, cannot affect the damages, which he would otherwise be entitled to recover of the wrongdoer, by whose wrongful act he was injured. If the treatment of the injury, procured by the injured party, in the exercise of due care, is beneficial, and reduces the damages resulting from the act or omission of the wrongdoer, such reduction relieves the wrongdoerpro tanto; if such treatment is not beneficial, and results in increased or additional damages, the wrongdoer whose act or omission made the treatment necessary or proper must be held liable for such additional or increased damages.
An application of these principles to the facts presented by defendant's assignment of error, leads to the conclusion that they cannot be sustained.
In Sears v. R. R., 169 N.C. 446, it is held that where there is some evidence that as the result of a personal injury, which was alleged to have been negligently inflicted by the defendant on its employees, two surgical operations were performed, and that the second one was made necessary by reason of the defendant's negligence and as a proximate result thereof, it is proper for the trial judge to refuse to instruct the jury that in no view of the case was the defendant liable for the additional suffering, etc., caused by the second operation.
It has further been held that where the injured person had received unskillful treatment by a physician or surgeon, increasing the damages, defendant may be liable for such consequences where the person injured has used reasonable care in selecting the physician or surgeon, 17 C. J., *Page 292 
738, note 56 and cases cited. In the instant case, plaintiff was taken first to the local surgeon of defendant; then by him to a hospital, where he remained, under treatment, for ten days; he then went to the hospital maintained by the United States Government at Camp Bragg, for the care and treatment of soldiers in the service of the government. There was evidence sufficient at least for the jury to find that plaintiff had exercised due care in the selection of physicians and surgeons to treat his wounded hand, and that such treatment as he received was proper, if not necessary, to repair the injury to plaintiff's hand, alleged to have been caused by defendant's negligence, and to mitigate or reduce the damages resulting from such injury. If the damages resulting immediately from the wrongful act of defendant was reduced by grafting skin, taken from plaintiff's body, upon the wounded hand, it is but just that defendant should be held liable for damages resulting from the grafting.
In addition to other evidence, tending to show that treatment by skin-grafting was necessary or proper, Dr. T. M. Bizzell, admitted to be an expert physician, testified that in his opinion, treatment by grafting skin upon the injured hand was necessary, although grafted skin does not possess the vitality and resistance of natural skin.
On the day when this case was set for trial, and within a few hours before it was called, defendant moved for a continuance upon the ground that J. W. Barham, a material witness in its behalf, who had been duly served with a subpoena, was sick and unable for that reason to attend the trial. Plaintiff's counsel resisted the motion, and stated to the court that they would consent that the deposition of J. W. Barham be taken during the term of court, and that they would waive notice of the taking of the deposition. In consequence of this statement, the court declined to allow the motion for continuance, and directed that the deposition be taken. The deposition was thereafter taken by the court stenographer, at the home of J. W. Barham, in Selma, in the presence of counsel for both plaintiff and defendant. The formalities of signing, sealing and opening the deposition were duly waived. During the trial, defendant's counsel offered this deposition in evidence. There was no objection by counsel for plaintiff to the form of the deposition, but said counsel stated to the court that they would object to such portions of the deposition as contradicted the allegations of defendant's answer, upon which defendant relied in support of its plea of contributory negligence as a bar to plaintiff's recovery. The court stated that "it would exclude all portions of the deposition tending to prove contributory negligence and which were in contradiction of defendant's pleadings." Defendant excepted to this statement *Page 293 
of the court, and did not thereafter offer to read to the court or the jury any part of the deposition.
Assignment of error based upon this exception cannot be sustained. The deposition had been taken informally; it had not been returned to the court, as required by C. S., 1809; owing to the circumstances under which the deposition was taken, C. S., 1819, and C. S., 1820 cannot be held to apply to this deposition. Plaintiff had had no opportunity to object in writing to testimony contained in the deposition, and to have these objections passed upon by the judge, before trial. The provisions of these statutes must necessarily be held to have been waived by the consent of both parties that the deposition should be taken during the term of court at which the case was tried. Plaintiff's first opportunity to be heard upon objection to the competency of the testimony contained in the deposition was when the deposition was offered by defendant as evidence during the trial. His consent that the deposition might be taken without notice, and his waiver of all formalities, required by statute, cannot be held to be a waiver of his right to object to incompetent testimony appearing in the deposition, and to have such objections passed upon by the court at the trial.
The general statement of the court, before defendant had read, or offered to read the deposition or any part of it, is not such a ruling upon the competency of evidence at the trial as may be made the ground of an exception. In order that an exception may be made the basis for an assignment of error, on appeal, it must be duly taken to a specific and definite ruling by the court upon a matter of law relative to the subject-matter of the controversy between the parties. After the statement by the court, defendant did not read or offer to read the deposition. The court therefore did not rule upon any specific testimony contained in the deposition; no ruling of the court upon the admissibility or competency of testimony offered by defendant as evidence upon the trial is presented by the assignment of error. Plaintiff did not object generally to the deposition; he objected only to such portions as might tend to contradict defendant's allegations with respect to contributory negligence. Phillipsv. Land Co., 174 N.C. 542; Smith v. McGregor, 96 N.C. 111.
Other assignments of error, based upon exceptions by defendant to the admission of evidence, and to instructions of the court in its charge to the jury have been carefully considered; it is not deemed necessary to discuss these assignments of error; they cannot be sustained.
Defendant relies chiefly upon its assignment of error based upon its exceptions to the refusal of the court to allow its motion for judgment as of nonsuit, at the close of all the evidence. Plaintiff does not *Page 294 
contend that there was negligence with respect to the construction of the place at which he was required to alight from the train, when it was stopped at Selma, or with respect to the construction of the walkway provided for him and other passengers to pass from the train to the Union Station. There was evidence to sustain his contention that it was dark when the train arrived at Selma; that he was required to alight from the train at a place 40 or 50 yards from the Union Station; that there were no lights at said place, or on the walkway, the lights at the station ahead of him not being sufficient to enable him to walk, with reasonable safety, toward the station; that there was a ditch just off the walkway, extending toward the station, which he could not see, because of the darkness, but which he knew was there; that in order to avoid falling into this ditch, he was walking close to the train, which began to move soon after he alighted; that there was a large number of passengers walking toward the Union Station at the time; that he wished to get to the station in time to purchase a ticket from Selma to Fayetteville, for the Atlantic Coast Line train, which made connection at Selma with defendant's westbound train; and that all these facts rendered the place along which he was required to walk unsafe, and that this was the proximate cause of his injury. This evidence was sufficient to be submitted to the jury, upon the first issue; it cannot be held that plaintiff's evidence was consistent only with an affirmative answer to the second issue, involving the defense of contributory negligence. There was a conflict in the evidence, at least, as to the proximate cause of plaintiff's injury; this required the submission of the evidence to the jury.
The principle that a common carrier is held to a high degree of care in the performance of its duty to a passenger to provide for him, at its passenger stations, not only a safe place at which, but also safe conditions under which he may go upon and alight from its trains, and pass to and from the train to the station, has been frequently applied in decisions of this Court. Leggett v. R. R., 168 N.C. 366; Roberts v. R.R., 155 N.C. 79; Smith v. R. R., 147 N.C. 448; Wagner v. R. R.,147 N.C. 315, 19 L.R.A. (N.S.), 1028; Mangum v. R. R., 145 N.C. 153;Ruffin v. R. R., 142 N.C. 120; Pineus v. R. R., 140 N.C. 450.
The principle has been recognized and enforced by courts in other jurisdictions, and pursuant thereto it has been held that "stations, as well as platforms, walks, and other approaches should at night be reasonably lighted for a sufficient time before and after the arrival and departure of trains to enable passengers to alight from and board trains with reasonable safety." 10 C. J., 919, note 74, and cases cited. The failure to provide sufficient lights to enable a passenger, by the exercise *Page 295 
of reasonable care for his own safety, under conditions existing at the time, certainly when caused by or known to the carrier, to walk from the place at which he is required to alight from the train, on a dark night, along the walkway provided by the carrier, to the station, is a breach of this duty, and when the proximate cause of an injury to the passenger, is actionable negligence. Upon the application of this principle to the facts which the jury might find from the evidence in this case, the motion for judgment of nonsuit was properly refused by the court.
At the time of his injury plaintiff was 19 years of age; three months prior thereto he had enlisted in the United States Army at Camp Bragg; prior to his enlistment he had lived with his mother on her farm near Pine Level, N.C. He testified that he had not had much education; his occupation was farming. Before the injury he was a strong, healthy young man, able to do a full day's work; since the injury, he can do only a fourth of the work which a man ought to do. He was in the hospital at Smithfield for ten days and at Fort Bragg from 27 August, 1924, to 5 January, 1925. He suffered "bad pain" at the time of the injury to his hand, and continues to suffer pain on account of said injury; he has lost all the fingers of his left hand, except the index finger and the thumb; the wound was repaired by skin grafted from two places on his side, and from his thigh; the operation by which the skin was grafted was necessary or at least proper for the repair of his injured hand; it caused him pain and suffering; this grafted skin is very thin and does not have the vitality and resistance of natural skin; it is easily injured, and when bruised or scratched does not heal readily. It is manifest that, because of his injury, he is permanently "handicapped" in doing the work of a farmer, or any work requiring the use of his hand. His injury was caused by the negligence of defendant, and was not contributed to by negligence on his part. The jury, under instructions from the court, which are well supported by decisions of this Court, has assessed his damages at $15,000. This is admittedly a large sum; the trial judge, however, did not disturb the verdict on the ground that it was excessive. Gilland v. Stone Co.,189 N.C. 783. On defendant's appeal we find no error in the trial upon matters of law or legal inference for which this Court may, in the exercise of its jurisdiction under the Constitution, grant a new trial. The judgment must be affirmed.
No error.
STACY, C.J., dissenting. *Page 296